Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Laura E. Goolsby (SBN 321721)
Laura.Goolsby@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:  (310) 556-4811
Facsimile:  (310) 943-0396

Russell D. Paul (*pro hac vice admission pending*)
rpaul@bm.net
Amey J. Park (*pro hac vice admission pending*)
apark@bm.net
BERGER MONTAGUE P.C.
1818 Market Street, Suite 3600
Philadelphia, PA  19103
Telephone:  (215) 875-3000
Facsimile:  (215) 875-4604

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN HARDY, TROY LUCASSIAN, and TODD BROWN individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>MITSUBISHI MOTORS NORTH AMERICA, INC., a California corporation, and MITSUBISHI MOTORS CORP., a Japanese corporation,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>(1)    Violations of California's Consumers Legal Remedies Act<br>(2)    Violations of California's Unfair Competition Law<br>(3)    Breach of Implied Warranty pursuant to Song-Beverly Consumer Warranty Act<br>(4)    Breach of Express Warranty under California law<br>(5)    Violations of Michigan's Consumer Protection Act<br>(6)    Breach of Express Warranty under Michigan law<br>(7)    Breach of Implied Warranty under Michigan law<br>(8)    Violation of New York General Business Law § 349<br>(9)    Violation of New York |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

General Business Law § 350
(10)    Breach of Express Warranty under New York Law
(11)    Breach of Implied Warranty under New York Law
(12)    Breach of Express Warranty under the Magnuson-Moss Warranty Act
(13)    Breach of Implied Warranty under the Magnuson-Moss Warranty Act
(14)    Fraudulent Concealment/Omission
(15)    Unjust Enrichment

**DEMAND FOR JURY TRIAL**

1    1.    Plaintiffs Ryan Hardy, Troy Lucassian, and Todd Brown

2  ("Plaintiffs"), individually and on behalf of all persons in the United States who

3  purchased or leased any 2014-2017 Mitsubishi Lancer, 2014-present Mitsubishi

4  Outlander, 2014-present Mitsubishi Outlander Sport, 2014-present Mitsubishi

5  Mirage, and/or 2018-present Mitsubishi Eclipse Cross vehicles equipped with a

6  continuously variable transmission ("CVT") designed, manufactured, marketed,

7  distributed, sold, warranted, and/or serviced by Mitsubishi Motors North America,

8  Inc. ("MMNA") and/or Mitsubishi Motors Corp. ("MMC") ("Class Vehicles" or

9  "Vehicles"), bring this action against MMNA and MMC (together, "Defendants"

10  or "Mitsubishi"). Plaintiffs allege as follows:

## INTRODUCTION

12    2.    This is a consumer class action concerning a failure to disclose

13  material facts and a safety concern to consumers.

14    3.    Defendants manufactured, marketed, distributed, and/or sold the

15  Class Vehicles without disclosing that the Class Vehicles' Continuously Variable

16  Transmission ("CVT") was defective.

17    4.    Specifically, Plaintiffs are informed and believe, and based thereon

18  allege, that the CVT is defective in that it causes the vehicle to shudder, surge,

19  jerk, to delay acceleration or fail to accelerate, and, ultimately, catastrophic

20  transmission failure (the "CVT Defect" or "Defect"). As further described below,

21  discovery will show that slippage of the CVT belt and resulting contamination of

22  the CVT's hydraulic pressure circuit and other internal components,

23  miscalibration of the CVT control unit, and an inadequate CVT cooling system

24  result in these failures.

25    5.    The CVT Defect causes sudden, unexpected shaking and violent

26  jerking (commonly referred to as "juddering" or "shuddering") when drivers

27  attempt to accelerate their vehicles; it causes the vehicle to lag or delay when the

28  driver tries to accelerate, causing an unsafe, unpredictable acceleration; it exhibits

a hard deceleration or "clunk" when drivers either slow down or accelerate at low speeds; it causes complete transmission failure in the middle of roadways, and it suffers catastrophic failure, necessitating replacement.

6.     Defendants sold the Class Vehicles with either a 10-year/100,000-mile powertrain warranty (2014-2017 Lancers, 2014-present Outlanders, Mirages, and Eclipses) or a 5-year/60,000-mile powertrain warranty (2014 - 2015 Lancer Evolutions, Ralliarts, and Sportbacks, 2014-2017 Lancer subsequent owners, and 2014-present Outlander, Mirage, and Eclipse subsequent owners) that purports to cover the CVT. However, owners and lessees often have complained that their CVTs fail and require replacement both within and just outside the warranty period. This is evidenced through Class members reports to the National Highway Traffic Safety Administration ("NHTSA"), that Mitsubishi's authorized dealerships are replacing transmissions both within, and just outside, the applicable express warranty periods.

7.     The CVT Defect is inherent in each Class Vehicle and was present at the time of sale.

8.     Discovery will show that, since 2014 if not earlier, Defendants have been aware the Class Vehicles' CVTs would need frequent repair, prematurely fail, require frequent replacement, including replacements just outside of warranty, that the replacement transmissions installed would be equally as defective as the originals, and that the CVT would cause the symptoms of the CVT Defect described above (juddering, lag when attempting to accelerate, hard deceleration, complete failure, and other symptoms), yet Defendants continued to install the defective CVT. Moreover, Defendants not only refused to disclose the problem to consumers, they also actively concealed, and continue to conceal, their knowledge concerning the CVT Defect.

9.     Defendants undertook affirmative measures to conceal CVT failures and other malfunctions through, among other things, Technical Service Bulletins

("TSB") issued to authorized repair facilities only.

10.    Defendants had superior and/or exclusive knowledge of material facts regarding the CVT Defect due to their pre-production testing, design failure mode analysis, aggregate part sales, dealer audits, aggregate warranty information, customer complaints made to NHTSA and online, and customer complaints made to Mitsubishi and its dealers.

11.    The CVT Defect is material because it poses a serious safety concern. As attested by Class Members in complaints to the National Highway Traffic Safety Administration ("NHTSA"), and other online forums, the CVT Defect can impair any driver's ability to control his or her vehicle and greatly increase the risk of collision. For example, turning left across traffic in a vehicle with delayed and unpredictable acceleration is plainly unsafe. In addition, these conditions can make it difficult to safely change lanes, merge into traffic, turn, accelerate from stop light/sign, and accelerate onto highways or freeways.

12.    Defendants' failure to disclose the CVT Defect has caused Plaintiffs and putative class members to lose the use of their Vehicles and/or incur costly repairs that have conferred an unjust substantial benefit upon Defendants.

13.    Discovery will show that, in an effort to conceal the CVT Defect, Defendants have instructed dealers to tell consumers their vehicles are "operating normally" or "operating as intended" when they are not, or to give excuses for sub-par performance. This is a common practice in the automotive industry, particularly with transmission-related issues. By denying the existence of a defect, manufacturers can play on the consumers' lack of technical expertise and avoid implementing potentially costly fixes for years, or at least until the vehicles are out of warranty. When remedial measures are taken, they are often through the issuance of service bulletins provided to dealers only that are narrowly crafted and underinclusive, as occurred here and set forth below.

14.    Had Defendants disclosed the CVT Defect, Plaintiffs and Class

Members would not have purchased the Class Vehicles, would have paid less for them, or would have required Defendants to replace, or pay for the replacement of, the defective CVT with a non-defective version before their warranty periods expired.

## THE PARTIES

**Plaintiff Ryan Hardy**

15.    Plaintiff Hardy is a New York citizen residing in Buffalo, New York.

16.    In or around March 2020, Plaintiff Hardy purchased a new 2020 Mitsubishi Mirage G4 from James Mitsubishi, an authorized Mitsubishi dealership in Hamburg, New York.

17.    Plaintiff Hardy purchased his vehicle primarily for personal, family, or household use.

18.    Passenger safety and reliability were important factors in Plaintiff Hardy's decision to purchase his vehicle. Before making his purchase, Plaintiff Hardy researched the Mitsubishi Mirage G4 online, including on the Mitsubishi website. At the dealership, Plaintiff Hardy also reviewed the vehicle's Monroney Sticker or "window sticker" which listed official information about the vehicle, as well as vehicle brochures provided to him by dealership personnel, both of which made no reference to the CVT Defect. Plaintiff Hardy believed that the Mirage would be a safe and reliable vehicle.

19.    Mitsubishi's omissions were material to Plaintiff Hardy. Had Mitsubishi disclosed its knowledge of the CVT Defect before he purchased his vehicle, Plaintiff Hardy would have seen and been aware of the disclosures. Furthermore, had he known of the CVT Defect, Plaintiff Hardy would not have purchased his vehicle, or would have paid less for it.

20.    Shortly after purchase, Plaintiff Hardy began experiencing transmission problems. Specifically, his vehicle jerks and shudders, even without acceleration, hesitates on acceleration, and slips gears and/or fails to engage gears,

all under normal driving conditions. Additionally, Plaintiff Hardy fears for his safety while merging on to highways and freeways, due to the sudden and unexpected loss and/or delay of acceleration his vehicle exhibits.

21.    On June 9, 2021, with 11,649 miles on the odometer, Plaintiff Hardy brought his vehicle to Cortese Mitsubishi, an authorized Mitsubishi dealer, complaining, as recorded on the dealership's repair records, that "THE VEHICLE AT A STOP WITH FOOT ON THE BRAKE WANTS TO LERK[sic] FORWARD WHEN FOOT IS ON THE BRAKE." The dealership failed to perform any repairs in response, and merely reported, "THE VEHICLE OPERATING AS DESGIEND[sic]."

22.    Despite bringing his vehicle to the Mitsubishi dealership—Mitsubishi's authorized agent for repairs—Plaintiff Hardy has not received a repair under warranty, and his vehicle continues to exhibit the CVT Defect.

23.    As a result of the CVT Defect, Plaintiff Hardy has lost confidence in the ability of his Class Vehicle to provide safe and reliable transportation for ordinary and advertised purposes. Further, Plaintiff Hardy will be unable to rely on the Class Vehicles' advertising or labeling in the future, and so will not purchase or lease another Class Vehicle although he would like to do so.

24.    At all times, Plaintiff Hardy, like all Class Members, has driven his vehicle in a manner both foreseeable and in which it was intended to be used.

**Plaintiff Troy Lucassian**

25.    Plaintiff Lucassian is a Michigan citizen residing in Detroit, Michigan.

26.    In or around August 2018, Plaintiff Lucassian purchased a new 2017 Mitsubishi Mirage from Moran Mitsubishi, an authorized Mitsubishi dealership in Southfield, Michigan.

27.    Plaintiff Lucassian purchased his vehicle primarily for personal, family, or household use.

28.    Passenger safety and reliability were important factors in Plaintiff Lucassian's decision to purchase his vehicle. Before making his purchase, Plaintiff Lucassian researched the Mitsubishi Mirage online, including on the Mitsubishi website. At the dealership, Plaintiff discussed safety and reliability with dealership personnel and was assured by the Mitsubishi employee the vehicle was both safe and reliable. Nowhere in his online research or his discussions with dealer personnel was Plaintiff Lucassian informed of the CVT Defect. Plaintiff Lucassian believed that the Mirage would be a safe and reliable vehicle.

29.    Mitsubishi's omissions were material to Plaintiff Lucassian. Had Mitsubishi disclosed its knowledge of the CVT Defect before he purchased his vehicle, Plaintiff Lucassian would have seen and been aware of the disclosures. Furthermore, had he known of the CVT Defect, Plaintiff Lucassian would not have purchased his vehicle, or would have paid less for it.

30.    In or around Summer 2020, Plaintiff Lucassian began experiencing transmission problems. Specifically, when coming to a stop, the transmission feels as though it wants to rotate and the vehicle lunges forward. Additionally, his vehicle hesitates on acceleration or fails on acceleration, even while the vehicle is exhibiting high revolutions per minute. All of the foregoing occurs under normal driving conditions.

31.    On August 10, 2020, with 47,192 miles on the odometer, Plaintiff Lucassian brought his vehicle to Moran Mitsubishi, an authorized Mitsubishi dealer, complaining, as recorded on the dealership's repair records, that "WHEN ACCELERATING    FROM    A    LIGHT    THERE    IS    A RESISTANCE/HESITATION."    The    dealership    failed    to    perform    any transmission repairs in response or even diagnose the transmission, merely replacing the engine oil and oil filter.

32.    Plaintiff Lucassian continued to experience the CVT Defect and on April 20, 2021, with 59,713 miles on the odometer, Plaintiff Lucassian brought

his vehicle to Waterford Mitsubishi, an authorized Mitsubishi dealer, complaining, as recorded on the dealership's repair records, that "FEELS LIKE VEHICLE IS HESITATING INTO GEAR CUSTOMER NOTICES RPMS REV AND FEELS SLOW TO TAKE OFF WHEN COMING TO A HARD STOP FEELS LIKE VEHICLE WILL LUNGE FORWARD BEFIRE COMPLETE STOP." The dealership confirmed Plaintiff Lucassian's concerns and replaced the transmission, reporting, "DELAYED INGAGEMENT[sic] GOING INTO BOTH DRIVE AND REVERSE NOTICE SOME SLIPPAGE OF TRANS ON TEST DRIVE REPLACED TRANS[.]"

33.    Despite bringing his vehicle to the Mitsubishi dealership—Mitsubishi's authorized agent for repairs—and receiving a replacement transmission, Plaintiff Lucassian's vehicle continues to exhibit the CVT Defect.

34.    As a result of the CVT Defect, Plaintiff Lucassian has lost confidence in the ability of his Class Vehicle to provide safe and reliable transportation for ordinary and advertised purposes. Further, Plaintiff Lucassian will be unable to rely on the Class Vehicles' advertising or labeling in the future, and so will not purchase or lease another Class Vehicle although he would like to do so.

35.    At all times, Plaintiff Lucassian, like all Class Members, has driven his vehicle in a manner both foreseeable and in which it was intended to be used.

**Plaintiff Todd Brown**

36.    Plaintiff Brown is a California citizen residing in Cypress, California.

37.    In or around September 2016, Plaintiff Brown purchased a new 2016 Mitsubishi Outlander from South Coast Mitsubishi, an authorized Mitsubishi dealership in Costa Mesa, California.

38.    Plaintiff Brown purchased his vehicle primarily for personal, family, or household use.

39.    Passenger safety and reliability were important factors in Plaintiff

Brown's decision to purchase his vehicle. Before making his purchase, Plaintiff Brown researched the Mitsubishi Outlander online, visited the dealership and reviewed the vehicle's Monroney Sticker or "window sticker" which listed official information about the vehicle, and test drove the vehicle. No reference to the CVT Defect was made. Plaintiff Brown believed that the Outlander would be a safe and reliable vehicle.

40.    Mitsubishi's omissions were material to Plaintiff Brown. Had Mitsubishi disclosed its knowledge of the CVT Defect before he purchased his vehicle, Plaintiff Brown would have seen and been aware of the disclosures. Furthermore, had he known of the CVT Defect, Plaintiff Brown would not have purchased his vehicle, or would have paid less for it.

41.    Shortly after purchase, Plaintiff Brown began experiencing transmission problems. Specifically, his vehicle hesitates upon acceleration, slips gears, and gets stuck in lower gears, all under normal driving conditions.

42.    On November 16, 2016, with 11,649 miles on the odometer, Plaintiff Brown brought his vehicle to Cerritos Mitsubishi, an authorized Mitsubishi dealer, complaining, as recorded on the dealership's repair records, that the vehicle exhibits "HESITATION WHEN TRYING TO ACSELLERATE[sic]." In response, the dealership reprogrammed the transmission control module.

43.    Plaintiff Brown continued to experience the CVT Defect and, on July 27, 2018, with 50,818 miles on the odometer, Plaintiff Brown brought his vehicle to Commerce Mitsubishi, an authorized Mitsubishi dealer, again complaining of hesitation. The dealership failed to diagnose or repair the CVT Defect, instead recommending a "transmission drain and refill" and charging Plaintiff Brown $166.75 out of pocket. The dealer otherwise informed Plaintiff Brown his transmission was running properly.

44.    Despite bringing his vehicle to Mitsubishi dealerships multiple times—Mitsubishi's authorized agent for repairs—Plaintiff Brown's vehicle

1    continues to exhibit the CVT Defect.

2        45.    As a result of the CVT Defect, Plaintiff Brown has lost confidence in

3    the ability of his Class Vehicle to provide safe and reliable transportation for

4    ordinary and advertised purposes. Further, Plaintiff Brown will be unable to rely

5    on the Class Vehicles' advertising or labeling in the future, and so will not

6    purchase or lease another Class Vehicle although he would like to do so.

7        46.    At all times, Plaintiff Brown, like all Class Members, has driven his

8    vehicle in a manner both foreseeable and in which it was intended to be used.

9    **Defendants**

10       47.    Defendant MMNA is a corporation organized and in existence under

11   the laws of the State of California and registered to do business in the State of

12   California. MMNA's Corporate Headquarters are located at 4031 Aspen Grove

13   Drive, Suite 700, Franklin, Tennessee, 37067. MMNA designs, manufactures,

14   markets, distributes, services, repairs, sells, and leases passenger vehicles,

15   including the Class Vehicles, nationwide, and in California, Michigan, and New

16   York. MMNA is the warrantor and distributor of the Class Vehicles in the United

17   States.

18       48.    At all relevant times, MMNA was and is engaged in the business of

19   designing, manufacturing, constructing, assembling, marketing, distributing,

20   and/or selling automobiles and motor vehicle components in California, New

21   York, Michigan and throughout the United States of America. MMNA is the

22   subsidiary of MMC and is the wholly owned subsidiary engaged in distribution,

23   marketing, sales, and service of Mitsubishi vehicles in the United States.

24       49.    In order to sell vehicles to the general public, MMNA enters into

25   agreements with dealerships who are then authorized to sell Mitsubishi-branded

26   vehicles to consumers such as Plaintiffs.  In return for the exclusive right to sell

27   new Mitsubishi vehicles in a geographic area, authorized dealerships are also

28   permitted to service and repair these vehicles under the warranties MMNA

CLASS ACTION COMPLAINT

provides directly to consumers. These contracts give MMNA a significant amount of control over the actions of the dealerships, including sale and marketing of vehicles and parts for those vehicles. All service and repairs at an authorized dealership are also completed according to MMNA's explicit instructions, issued through service manuals, TSBs, and other documents, that were created with input from MMC. Per the agreements between MMNA and the authorized dealers, consumers such as Plaintiffs can receive services under MMNA's issued warranties at dealer locations that are convenient to them. MMNA has a nationwide dealership network and operates offices and facilities throughout the United States. MMNA distributes Mitsubishi parts and vehicles, which are then sold through Defendants' network of dealerships. Money received from the purchase of a Mitsubishi vehicle from a dealership flows from the dealer to MMNA.

50.     Defendant MMC is a Japanese corporation located at 1-21, Shibaura 3chome, Minato-ku Tokyo, Japan 108-8410. Defendant MMC is the parent company of Mitsubishi and is responsible for the design, manufacturing, distribution, marketing, sales, and service of Mitsubishi vehicles, including the Class Vehicles, around the world, including in the United States.

51.     Discovery will show that Defendant MMC communicates with Defendant MMNA concerning virtually all aspects of the Mitsubishi products it distributes within the United States.

64.     Discovery will show that MMNA and MMC jointly design, determine the substance of, and affix to its vehicles the window stickers visible on each new Mitsubishi vehicle that is offered for sale at its authorized dealerships, including those omitting mention of the Defect. These stickers were reviewed by Plaintiffs and the Class prior to purchasing Class Vehicles. Defendants control the content of these window stickers; its authorized dealerships have no input with respect to their content. Vehicle manufacturers like Mitsubishi are legally required to affix a

window sticker to every vehicle offered for sale in the United States pursuant to the Automobile Information Disclosure Act of 1958, 15 U.S.C. §§ 1231-1233, *et seq*. The Act specifically prohibits the removal or alteration of the sticker by anyone other than the ultimate purchaser prior to the sale of the car, including the dealership at which the vehicle is offered for sale.

65. Defendants developed and disseminated the marketing materials to which Plaintiffs and the Class were exposed, including owner's manuals, informational brochures, warranty booklets, and information included in maintenance recommendations and/or schedules for the Class Vehicles, and other promotional materials relating to the Class Vehicles, all of which fail to disclose the Defect.

52. Defendants designed, manufactured, constructed, assembled, marketed, distributed, sold, and warranted the Class Vehicles, including Plaintiffs' vehicles.

## JURISDICTION

53. This is a class action.

54. Members of the proposed Class are citizens of states different from the home states of Defendants.

55. There are at least 100 members in the proposed class, and the aggregate claims of individual Class Members exceed $5,000,000.00 in value, exclusive of interest and costs.

56. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d).

57. This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to the Court's jurisdiction. This Court has personal jurisdiction over Defendants because MMNA is incorporated in this District; MMC conducts substantial business in this District through MMNA; and discovery will show that significant conduct involving Defendants giving rise to the Complaint took place in this District.

CLASS ACTION COMPLAINT

1

**VENUE**

2          58.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because

3    Plaintiff Brown resides in Orange County, California, the conduct giving rise to

4    this lawsuit occurred here, MMNA is deemed to reside in this district pursuant to

5    28 U.S.C. § 1391(a), and MMNA is incorporated here, and Defendants are subject

6    to personal jurisdiction here by conducting business within the State of California.

7    Plaintiffs' counsel's Declaration of Venue, to the extent required under California

8    Civil Code section 1780(d), is attached hereto as **Exhibit 1**.

9

**FACTUAL ALLEGATIONS**

10          59.    Defendants designed, manufactured, distributed, marketed, sold,

11    and/or leased the Class Vehicles. Defendants sold, directly or indirectly, through

12    dealers and other retail outlets, thousands of Class Vehicles in California and

13    nationwide. Defendants warrant and service the Class Vehicles through their

14    nationwide network of authorized dealers and service providers.

15          60.    The CVT is an automatic transmission that uses two variable-diameter

16    pulleys with a steel belt running between them to change speed, instead of a gearbox

17    and clutch system. Rather than relying on the fixed gear ratios of the traditional

18    automatic transmission, the pulleys can adjust their width to make the belt turn

19    faster or slower, depending on the speed of the vehicle and the torque needed. In

20    theory, the CVT chooses the gear ratio optimum for driving conditions.

21          61.    The CVT, allegedly offering more efficient power delivery and better

22    fuel economy, is standard in the Class Vehicles.

23          62.    Consumers complain that their vehicles take an inordinately long time

24    to accelerate from a stop or low speed, exhibit a hard deceleration or "clunk" when

25    drivers either slow down or accelerate at low speeds, shudder and shake or make a

26    loud clunking or knocking sound when the CVT finally selects the appropriate gear

27    ratio, and completely fail to accelerate. Consumers also frequently complain of

28    unusually high RPMs or a loud whining once they achieve speed and which exceeds

1    their reasonable expectations for noise from the CVT. Finally, in addition to

2    hesitations, slow response, and loud noises, the lifespan of the CVT in the Class

3    Vehicles is unreasonably short.

4        63.    In a TSB issued only to its dealerships but not its customers,

5    Mitsubishi has admitted that the shuddering, surging, engine flare, lack of

6    acceleration, and shaking are attributable to internal contamination caused by

7    slippage of the CVT's belt. *See* Exhibit 2, TSB-20-23-001REV, "Potential

8    Transmission Shudder/Surge with Possible DTC (CVT-8)." In the TSB,

9    Mitsubishi describes the root cause of the CVT Defect as follows:

10   Certain vehicles with F1CJC/W1CJC (CVT-8) transmissions may exhibit a shudder or surge condition
     possibly caused by poor reaction of the hydraulic pressure circuit. With continued driving under
11   these conditions, the CVT belt may slip repeatedly when accelerating, and abrasion powder may
     enter the hydraulic pressure circuit, causing a warning light to turn on with one of the following
12   DTCs: P0776, P0730, P0741, P084A, P0969, P2719. The shudder/surge condition may also be
     described as engine flare, lack of acceleration, and/or car shake.

13       64.    Discovery will show that improper calibration of the CVT's control

14   unit, referred to by Mitsubishi as the CVT-ECU, contributes to the CVT Defect.

15   For example, as discussed further below, after an investigation into CVT-caused

16   hesitation opened in January 2016, Mitsubishi announced a safety recall whereby

17   the CVT-ECU would be recalibrated to prevent the CVT-ECU from instructing

18   the engine-ECU to reduce its torque output to prevent "shift shock" and slippage

19   of the CVT metal belt following range switch signal loss—a condition Mitsubishi

20   admitted was causing an "unexpected reduction in available acceleration" in a

21   subset of the Class Vehicles, which could "result in an increased risk of an

22   accident" that constituted "a safety issue depending on the driving situation."

23   Although Mitsubishi stated that the recalibration of the CVT-ECU was necessary

24   only to prevent the CVT-ECU from relaying this range switch signal loss to the

25   engine-ECU and that the issue was corrected in production, discovery will show

26   that the CVT-ECU is otherwise improperly calibrated, thus causing the CVT

27   Defect's symptoms, and that the recall did not resolve the CVT Defect.

28       65.    Discovery will show that inadequate cooling also contributes to the

CLASS ACTION COMPLAINT

1  CVT Defect. The CVT fluid temperature is improperly regulated. This fluid
2  lubricates all the components of the CVT, including the belts, pulleys, and valves.
3  This design and/or manufacturing defect makes the transmission unreasonably
4  sensitive to heat. The CVT in every Class Vehicle is thus prone to overheating,
5  which activates a fluid temperature protection mode and reduces transmission
6  performance, among other symptoms. As a result, drivers experience conditions
7  ranging from shuddering, jerking, failure to accelerate, all the way to catastrophic
8  transmission failure.

9       66.     The CVT Defect alleged is inherent in and the same for all Class
10 Vehicles.

11      67.     Discovery will show that Mitsubishi was aware of material facts
12 regarding the CVT Defect but failed to disclose them to consumers. As a result of
13 this failure, Plaintiffs and Class Members have been damaged.

14              **The CVT Defect Poses an Unreasonable Safety Hazard**

15      68.     The CVT Defect poses an unreasonable safety hazard. Hesitations,
16 slow/no responses, hard braking, and/or catastrophic transmission failure impair
17 drivers' control over their vehicles, which significantly increases the risk of
18 accidents. For example, turning across traffic in a vehicle with delayed and
19 unpredictable acceleration is unsafe. In addition, these conditions can make it
20 difficult to safely change lanes, merge into traffic, turn, brake slowly or accelerate
21 from stop light/sign, and accelerate onto highways or freeways.

22      69.     Federal law requires automakers like Mitsubishi to be in close contact
23 with NHTSA regarding potential auto defects, including imposing a legal
24 requirement (backed by criminal penalties) compelling the confidential disclosure
25 of defects and related data by automakers to NHTSA, including field reports,
26 customer complaints, and warranty data. *See TREAD Act,* Pub. L. No. 106-414,
27 114 Stat.1800 (2000).

28      70.     Automakers have a legal obligation to identify and report emerging

safety-related defects to NHTSA under the Early Warning Report requirements. *Id.* Similarly, automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including those which are safety related. *Id.* Thus, Mitsubishi knew or should have known of the many complaints about the CVT Defect logged by NHTSA Office of Defects Investigation (ODI). The content, consistency, and disproportionate number of those complaints alerted, or should have alerted, Mitsubishi to the CVT Defect.

71.     With respect solely to the Class Vehicles, the following are but a few examples of the many complaints concerning the CVT Defect which are available through NHTSA's website, www.safercar.gov. Many of the complaints reveal that Mitsubishi, through its network of dealers and repair technicians, has been made aware of the CVT Defect. In addition, the complaints indicate that despite having knowledge of the CVT Defect and even armed with knowledge of the exact vehicles affected, Mitsubishi often refused to diagnose the defect or otherwise attempt to repair it while Class Vehicles were still under warranty.

> a.  **DATE OF INCIDENT:** September 16, 2014
> **DATE COMPLAINT FILED:** September 22, 2014
> **NHTSA/ODI ID:** 10638179
> **SUMMARY:** I WHILE DRIVING THE VEHICLE, THE VEHICLE STARTED TO SHAKE AND THEN LOST THE ABILITY TO MOVE. CHECK ENGINE LIGHTS CAME ON. VEHICLE ENGINE WOULD RUN BUT VEHICLE WOULD NOT MOVE FORWARD OR REVERSE. VEHICLE HAD TO BE TOWED TO LOCAL Mitsubishi DEALERSHIP. ENTIRE TRANSMISSION HAD TO BE REPLACED
>
> b.  **DATE OF INCIDENT:** September 15, 2015
> **DATE COMPLAINT FILED:** October 26, 2015
> **NHTSA/ODI ID:** 10786132
> **SUMMARY:** UPON STARTING THE VEHICLE AND TAKING OFF WITH THE SHIFTER ENGAGED IN AUTOMATIC, THE

CAR QUICKLY ENGAGES THE FIRST GEAR BUT AS I DEPRESS THE ACCELERATOR PEDAL TO ACCELERATE, IT FEELS AND SOUNDS LIKE THE ENGINE IS ABOUT TO STALL OUT AND THE VEHICLE SLOWS BACK DOWN AS IF HESITATING AND MALFUNCTIONING, THEN IT VERY SLOWLY OVER ABOUT A 20-30 SECOND LULL WILL BEGIN TO PICK UP SPEED AT AN INCREDIBLY SLOW AND DANGEROUS SPEED. I HAVE TRIED MAKING RIGHT TURNS AND LEFT YIELD TURNS ONLY TO FIND THAT I CANNOT MOVE FAST ENOUGH OUT OF ANOTHER VEHICLES PATH IN A SAFE TIME AND THAT IT IS TOO DIFFICULT TO TRY AND PRESUME HOW LONG IT WILL TAKE TO CROSS A STREET AS THE ACCELERATION OF THE VEHICLE IS UNPREDICTABLE EVERY TIME. I HAVE TO CONSTANTLY DRIVE WITH THE SHIFTER IN MANUAL TO OVERRIDE THIS PROBLEM. THIS HAS ALMOST CAUSED ME SEVERAL ACCIDENTS BEFORE I WAS ABLE TO DECIPHER THE SAFER MANUAL POSITION IT ACCELERATION OF THE VEHICLE.

c. **DATE OF INCIDENT:** July 1, 2015
**DATE COMPLAINT FILED:**   December 1, 2015
**NHTSA/ODI ID:**     10807645
**SUMMARY:** WHEN I PUSH ON GAS, THE CAR NEVER SHIFTS GEARS! I CAN START OUT SLOWLY WITH A LITTLE GAS PEDDLE PRESSURE, BUT WHEN TRYING TO GET UP TO SPEED AND MERGE WITH TRAFFIC, IT WILL NEVER SHIFT INTO A HIGHER GEAR! IT STAYS AT ABOUT 20MPH AND ENGINE REVS TO RED ZONE UNLESS I LIFT OFF GAS. I DON'T EVEN GET GAS PEDDLE HALFWAY DOWN. TRANSMISSION ROARS, CAR DOESN'T GO, AND I CAN'T GO FORWARD BUT AT A SLOW CRAWL UNLESS I PULL OVER, LET OFF GAS COMPLETELY SO CAR CAN SETTLE, THEN TRY AGAIN. IT WON'T SHIFT IN AWD OR 4WD AND I OLD LADY, I DON'T TROOMP N ROCKET. I JUST WANT TO GET UP TO 55MPH WITHIN 1 MILE WITHOUT SENDING MY ENGINE INTO DRAGONFLIES AND HALF A TANK OF GAS GONE! I ASKED DEALER AND HE BLEW IT OFF AS A SLOW STARTINGVEHICLE, BUT IT'S GETTING WORSE AND TYRANNY NOT SHIFTING RIGHT. HAVE TO FIND A Mitsubishi SERVICE CENTER.

d. **DATE OF INCIDENT:** January 28, 2017

**DATE COMPLAINT FILED:** January 15, 2017

**NHTSA/ODI ID:** 10948165

**SUMMARY:** I'M NOT SURE IF IT IS IN THE MOTOR OR TRANSMISSION OF MY SUV. WHAT HAPPENS IS WHEN I AM DRIVING ON THE HIGHWAY I PUSH DOWN ON THE ACCELERATOR AND ITS AS THOUGH MY CAR IS STANDING STILL THEN A FEW SECONDS LATER THE ACCELERATE STARTS TO WORK AND MOVE THE CAR, THIS HAS HAPPENED A FEW TIMES AND I HAVE ALMOST BEEN HIT FROM BEHIND BECAUSE OF THIS. I NO LONGER DRIVE MY CAR ON THE HIGHWAYS BECAUSE I'M TERRIFIED THAT THIS WILL HAPPEN AGAIN WHILE ON THE HIGHWAY AND I WILL BE CRASHED OR EVEN KILLED DUE TO WHAT EVER IS GOING ON WITH MY CAR.

e.  **DATE OF INCIDENT:** March 7, 2019

**DATE COMPLAINT FILED:** March 6, 2019

**NHTSA/ODI ID:** 11184754

**SUMMARY:** WHEN I AM ACCELERATING, PUSHING THE GAS PEDAL THE RPMS GO DOWN SIGNIFICANTLY THEN RISER SIGNIFICANTLY. NOW THERE IS A DEEP RUMBLE OR VIBRATION IF I GO ABOVE 50 AND THE CHECK ENGINE LIGHT IS ON. I LIVE IN FLAT TERRAIN WITH OCCASIONAL HILLS BUT DRIVE MOSTLY HIGHWAYS.

f.  **DATE OF INCIDENT:** June 19, 2019

**DATE COMPLAINT FILED:** May 17, 2019

**NHTSA/ODI ID:** 11220947

**SUMMARY:** TOOK VEHICLE IN TO DEALER DUE TO A VIBRATION COMING FROM TRANSMISSION, AND ALSO, MY VEHICLE WOULD BE SLUGGISH WHEN IT WARMED UP. MOST CONCERNING, WAS WHEN SLOWING AT AN INTERSECTION TO TURN, AND THEN PRESSING THE GAS TO ACCELERATE, THE VEHICLE WOULD BE HESITANT. THIS ALMOST RESULTED IN A CAR ACCIDENT. BASED ON OTHER REVIEWERS, I FIND THIS TO BE A CONCERN FOR MORE THAN JUST MYSELF. I HAD TO PURCHASE A BRAND NEW TRANSMISSION AT $7,100. TOTAL MILES IS 56,000. WHEN ON THE HIGHWAY, AND ATTEMPTING TO ACCELERATE. THE RPMS WOULD SHOOT UP, BUT THE TRANSMISSION FELT LIKE IT WOULD NOT SHIFT GEARS. I HAD TROUBLE AT TIMES SPEEDING UP ON THE HIGHWAY. THIS COULD HAVE

ALSO RESULTED IN A BAD ACCIDENT.

g.  **DATE OF INCIDENT:** November 5, 2021
**DATE COMPLAINT FILED:** October 8, 2021
**NHTSA/ODI ID:** 1 1439506
**SUMMARY:** I was driving on the way home, my car started to skip and jerking. Went to Mitsubishi and told me I needed a whole new transmission replacement on a 2016 Lancer with only 81,000 miles on it. It seemed to never catch up to speed smoothly. Which I was terrified I was going to wreck otw home that day.

h.  **DATE OF INCIDENT:** October 27, 2021
**DATE COMPLAINT FILED:** October 25, 2021
**NHTSA/ODI ID:** 11438417
**SUMMARY:** Our 2016 lancer has suddenly started hesitating/ taking seconds to shift from park to reverse/drive. Also while driving vehicle its rpms fluctuate causing a shudder and surge in power or acceleration. This is a very alarming problem as it puts mine and my kids safety as it hesitates to shift and while driving it loses power and then powers up by itself. We have taken to a transmission shop (HIgH TECH Transmission) and now a dealer (Mission Mitsubishi) and both have replicated problem and pulled code but dealer will not honor recall or repair it. There was a safety recall for 2016 lancers with a cvt8 (SR-16-006) that produces a code P084A as well which and that if both were present a replacement transmission should be approved. All information was pulled from Mitsubishi website, and I called them and spoke to Carla did not give a last name and she advised me that our lancer doesn't have a recall and I said well is it possible you'll missed some vehicles that have the same problem from the recalls you'll have already put out? And she got snappy and said to contact safer car.gov; so here I am, presenting facts to you'll that my 2016 lancer may and hopefully is part of a recall which in result to not being identified or checked out caused more damage as stated it would on the manufacturers website. And needs to be fixed due to not being identified in recall so preventive measures could have been taken. Please our vehicle is experiencing the problem as a recall Mitsubishi put out but failed to identify our lancer and now is experiencing hesitation in CVT trans, and shudder/surge in transmission.

i.  **DATE OF INCIDENT:** March 29, 2021
**DATE COMPLAINT FILED:** March 1, 2021
**NHTSA/ODI ID:** 11405458

**SUMMARY:** AUTOMATIC CVT TRANSMISSION BEGAN FAILING AT 60,000 MILES. TRANSMISSION FLUID WAS CHANGED AT 30K MILES, 55K MILES, 80K, AND 98,000 MILES. TRANSMISSION COMPLETELY FAILED AT 98,000 MILES. THIS IS DUE TO A MANUFACTURER DEFECT AND WE SHOULD NOT HAVE TO PAY FOR THIS OUT OF POCKET. PLEASE OPEN A RECALL. THIS HAS BEEN REPORTED SEVERAL TIMES ON THIS VIN SERIES. THE VEHICLE HESITATES TO SWITCH GEARS AND CANNOT ENTER 4TH GEAR OR HIGHER. TRANSMISSION SLIPS WITH ACCELERATION. PLEASE RECALL!

**DATE OF INCIDENT:** March 7, 2021
**DATE COMPLAINT FILED:** March 7, 2021
**NHTSA/ODI ID:** 11399625
**SUMMARY:** AS I WAS DRIVING IT IT SEEMS TO HESITATE ON ACCELERATING AFTER A FEW STOPS THE TRANSMISSION LIGHT WOULD COME ON FOR A LITTLE BIT THEN GO OFF. SAME WITH THE CHECK ENGINE LIGHT. AS I WAS DRIVING IT TO WORK ON THE HIGHWAY.. IT SUDDENLY STARTED LOSING POWER AND I WAS ABLE TO PULL OVER AND PARK IT AT A GAS STATION WHERE IT WENT COMPLETELY DEAD.. I HAD AAA TOW IT.. IT STARTED UP BUT THE SHIFTING IS NOT ENGAGING RIGHT AWAY. HAD THE SOFTWARE UPDATED IN 2019.. THE CVT TRANSMISSION ARE FULL OF PROBLEMS. IT SEEMS TO HAVE THE SAME SYMPTOMS AS THE RECALL BUT MY CAR WAS NOT RECALLED ACCORDING TO THE VIN NUMBER.. I HAD A FLUSH DONE RECENTLY AND I HAVE ALSO HAD THE OIL CHANGED WHEN NEEDED. THE ACCELERATION HESITATION THEN LOSS OF POWER WHILE DRIVING 60 ON THE FREEWAY IS A SAFETY ISSUE... A LOT OF SEMI TRUCKS TRAVEL THAT HIGHWAY AND THEY CANT STOP WHEN A CAR LOSES POWER IN FRONT OF THEM.

j.   **DATE OF INCIDENT:** April 18, 2017
**DATE COMPLAINT FILED:** January 10, 2017
**NHTSA/ODI ID:** 10979053
**SUMMARY:** I HAVE NOTICED AN ISSUE WITH MY CARS ACCELERATION FROM A 0 MILE PER HOUR STARTING POINT TO A 30 MPH. IT IS VERY SUDDEN AND RANDOM. IT HAS OCCURRED SEVERAL TIMES FROM A STOP AT A

TRAFFIC LIGHT OR A STOP SIGN. THERE IS A SECOND TO AS LONG AS 4 SECOND HESITATION IN ACCELERATION. ACCELERATOR PEDAL IS PRESSED AND THE CAR TAKES OFF FOR A BRIEF SECOND OR 2 BEFORE THE FEW SECOND HESITATION OCCURS. IT CAN BE DANGEROUS IF THIS OCCURS WHEN PULLING OUT ON A BUSY HIGHWAY WITH TRAFFIC COMING. FOR THOSE FEW SECONDS THERE IS NOTHING YOU CAN DO BUT PRESS THE GAS PEDAL HARDER WHEN THOUGH THE CAR IS NOT DOING ANYTHING. AFTER THOSE FEW SECONDS THE CAR TRANSMISSION KICKS IN AND YOU EVENTUALLY HAVE CONTROL IN ACCELERATION ONCE AGAIN. TOOK TO THE DEALER TODAY. THEY SAID NO RECALLS ON THE VEHICLE. ONLINE I SEE A SIMILAR RECALL ON THE OUTLANDER TRANSMISSION BUT SERVICE TECH SAYS HE CHECKED AND NOTHING ON THE LANCER. THEY DROVE MY CAR AND OF COURSE IT DON'T HAPPEN. IT'S VERY RANDOM. IT USUALLY HAPPENS ONCE A WEEK. IT HAS PROB OCCURRED ABOUT 10 TIMES IF NOT MORE. THERE IS NO WAY TO EXPECT IT SO NOW I HAVE TO TAKE EXTREME CAUTION WHEN I'M ABOUT TO PULL OUT ON A BUSY ROAD WITH TRAFFIC COMING MY WAY. HAS ANYONE ELSE HAD THIS ISSUE WITH THEIR LANCER?

k.  **DATE OF INCIDENT:** August 16, 2019
**DATE COMPLAINT FILED:** August 15, 2019
**NHTSA/ODI ID:** 11244413
**SUMMARY:** WHILE DRIVING THE ABOVE VEHICLE ON THE FREEWAY THE CAR SHUT DOWN. I PULLED OVER SAFELY TO THE SIDE. SHUT THE VEHICLE OFF COMPLETELY AND THEN RESTARTED IT.THE DASH WAS LIT UP LIKE A CHRISTMAS TREE AND THE CAR STARTED AND WAS TO DRIVE HOME IN A LIMP MODE IN. CALLED THE DEALER THE CAR HAD RECALL FOR SOFTWARE UPDATE.THE DEALER MICHAUD Mitsubishi IN DANVERS MA UPDATED THE SOFTWARE AND CLEARED CODES. FEW DAYS BACK THE CARE REFUSED TO UP-SHIFT WHILE DRIVING AND WOULD NOT EXCEED MORE THEN 35 TO 40 MILES PER HOUR.I NOTIFIED THE ABOVE DEALER AND TOOK IT BACK TO THEM NO ERROR CODE WAS FOUND. I CONTINUED DRIVING. ON WED 8/14/19 THE CAR AGAIN WOULD NOT UP-SHIFT AND STAYED IN 2ND GEAR AND RPM WENT UP TO

5000. I PULLED OVER AND SHUT OFF THE VEHICLE. RESTARTED IT AND IT DROVE NORMALLY. I AGAIN MADE AN APPOINTMENT FOR FRIDAY 8/16/19 TO THE DEALER TO SHOW THEM WHAT WAS HAPPENING. I WAS DRIVING YESTERDAY 08/15/19 AROUND 10.15 AM ON THE FREEWAY AT APPROXIMATELY 70 MILES AN HOUR WITH AN 18 WHEELER BEHIND ME, THE CAR SHUT OFF 2ND TIME IN ITS LIFE AND THE DASHBOARD LIT UP LIKE A CHRISTMAS TREE AGAIN. I QUICKLY AND SAFELY PULLED OVER BEFORE I WAS REAR ENDED BY THE 18 WHEELER. I TOOK PICS OF DASHBOARD AS IT WAS SHOWING ERROR CODES. I CALLED THE DEALER AND ASKED THAT I COULD BRING THE CAR NOW. THE LADY ANSWERING THE PHONE WAS HOSTILE AND ULTIMATELY TURNED OVER THE CALL TO OWNERS SON ZACK. I WENT TO DEALER BY NOON YESTERDAY AND TALKED TO PAUL IN SERVICE/SALES. THE VEHICLE WAS EXAMINED AND THE SAME ERROR CODES HAD AGAIN BEEN REGENERATED BY ON BOARD COMPUTER. I WAS TOLD TO LEAVE THE VEHICLE WHILE DEALERS SERVICE DEPT WAS TRYING TO GET IN TOUCH WITH Mitsubishi SERVICE DEPT. AS OF TODAY 08/16/19 I DONT HAVE A STATUS UPDATE ON THE VEHICLE. *DT *TR *JS

l.  **DATE OF INCIDENT:** September 1, 2016
**DATE COMPLAINT FILED:** March 10, 2016
**NHTSA/ODI ID:** 10903141
**SUMMARY:** TL* THE CONTACT OWNS A 2015 Mitsubishi MIRAGE. WHILE APPROACHING A STOP, THE VEHICLE FELT AS THOUGH IT LUNGED FORWARD AND JERKED VIOLENTLY. THERE WERE NO WARNING INDICATORS ILLUMINATED. THE VEHICLE WAS TAKEN TO A DEALER, BUT WAS NOT DIAGNOSED. THERE WAS CONCERN THAT THE LOW REVERSE BRAKE COULD RE-ENGAGE. THE MANUFACTURER WAS NOT MADE AWARE OF THE ISSUE. THE FAILURE MILEAGE WAS 19,500.

m. **DATE OF INCIDENT:** January 6, 2021
**DATE COMPLAINT FILED:** January 5, 2021
**NHTSA/ODI ID:** 11386766
**SUMMARY:** TRANSMISSION CVT HAVE PROBLEMS. CAR HAD A CHANGE TRANSMISSION OIL IN DEC 2020, AND

CLASS ACTION COMPLAINT

YESTERDAY CAR STOP TO GEAR AND INCREASE SPEED. AFTER USED OBII SCAN, IT POP UP 5 DIFFERENTS CODE INCLUDING SOLENOIDE PROBLEM AND SPEED SENSORS. I HAVE TO CHANGE TRANSMISSION OIL AGAIN BECAUSE IT WAS DIRTY (LIGHT BLACK) IN JUST 3 WEEK BURNED THE NEW OIL. CAR START TO INCREASE SPEED AND GET GEAR BETTER BUT NOT GOOD ENOUGH TO FULL SPEED. ALL FIVE CODES DESAPEAR AS WELL AS "ENGINE SERVICE SOON" CAR HAVE 113000 MILES. I BELIEVE CAR HAVE COMPUTER PROBLEMS AND TRANSMISSION PROBLEMS CAR CANT SAID ONE DAY 5 PROBLEMS, WE CHANGE THE TRASNMISSION OIL AND NOW IT SAID NOT PROBLEM

n.  **DATE OF INCIDENT:** January 10, 2018
**DATE COMPLAINT FILED:** January 10, 2018
**NHTSA/ODI ID:** 11062060
**SUMMARY:** TRANSMISSION IDLE SHUDDER. ERRATIC SHIFTING. FEELS LIKE CVT FAILING. Mitsubishi DEALERSHIP CONFIRMED AND REPROGRAMMED CVT PER BULLETIN FROM MANUFACTURER. DENIED COVERAGE UNDER 10 YEAR / 100,000 POWER TRAIN WARRANTY. DEALER SAID PROGRAMMING IS NOT PARTS FAILURE.

o.  **DATE OF INCIDENT:** October 5, 2018
**DATE COMPLAINT FILED:** October 5, 2018
**NHTSA/ODI ID:** 11133605
**SUMMARY:** LOST OF ACCELERATION OR SUDDEN ACCELERATION, HELLO, I PURCHASED THIS Mitsubishi MIRAGE 2017, AND I DROVE IT FOR 2000 MILES. I HAVE NOTICED THE LOST OF ACCELERATION OR SOMETIMES SUDDEN ACCELERATION WITHOUT PRESSING THE ACCELERATOR. I AM REPORTING MY Mitsubishi TO BE ON THE SAFE SIDE, AND I AM ASKING IF THIS PROBLEM CAN BE A TRIGGER FOR A RECALL ABOUT THIS CAR. I WANTED TO STOP FOR A STOP SIGN, BUT THE CAR DID A SUDDEN ACCELERATE, AND I HAD TO PRESS THE BRAKES HARD. I HAD 3 PASSENGERS IN THE CAR, AND THE ACCELERATION WAS LOSING POWER, AND I HAD TO DRIVE MY CAR VERY SLOW. BUT WHEN I DROPPED THE PASSENGERS, THE CAR WAS DRIVING FINE.

p.  **DATE OF INCIDENT:** July 3, 2018

**DATE COMPLAINT FILED:** June 25, 2018
**NHTSA/ODI ID:** 11105380
**SUMMARY:** TL* THE CONTACT OWNS A 2017 Mitsubishi MIRAGE. WHILE DRIVING VARIOUS SPEEDS, THE VEHICLE WOULD JERK, HESITATE, AND STALL AFTER THE ACCELERATOR PEDAL WAS RELEASED. THE MANUFACTURER AND LOCAL DEALER (HIGH POINT Mitsubishi, 2411 NORTH MAIN ST., HIGH POINT, NC) WERE BOTH NOTIFIED OF THE FAILURE. THE FAILURE WAS NOT DIAGNOSED OR REPAIRED. THE VIN WAS NOT AVAILABLE. THE FAILURE MILEAGE WAS 25,000.

q.  **DATE OF INCIDENT:** May 4, 2018
**DATE COMPLAINT FILED:** April 5, 2018
**NHTSA/ODI ID:** 11091927
**SUMMARY:** TL* THE CONTACT OWNS A 2018 Mitsubishi MIRAGE. WHILE DRIVING VARIOUS SPEEDS, THE VEHICLE SHOOK AND THE ENGINE REVVED. THERE WERE NO WARNING INDICATORS ILLUMINATED. THE VEHICLE WAS TAKEN TO SCHUMACHER Mitsubishi (4047 OKEECHOBEE BLVD, #200, WEST PALM BEACH, FL 33409, 561-935-4302) WHERE IT WAS DETERMINED THAT THE VEHICLE WAS PERFORMING AS DESIGNED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE WAS NOT REPAIRED. THE FAILURE MILEAGE WAS 8.

r.  **DATE OF INCIDENT:** April 15, 2021
**DATE COMPLAINT FILED:** April 15, 2021
**NHTSA/ODI ID:** 11413289
**SUMMARY:** THE CAR STARTED SHAKING PROFUSELY WHILE DRIVING. I PULLED OVER AND IT WAS LOUD. I TURNED OFF THE CAR AND EVERYTHING SEEMED NORMAL. I STARTED DRIVING AND AFTER ABOUT 100YARDS IT STARTED SHAKING AND WOULDN'T ACCELERATE. I WAS ON ACCESS ROAD DRIVING. IT CAME ALL OF A SUDDEN.

s.  **DATE OF INCIDENT:** October 15, 2020
**DATE COMPLAINT FILED:** October 15, 2020
**NHTSA/ODI ID:** 11364470
**SUMMARY:** WHILE DRIVING AND AUTOMATIC THE CAT JUMPS RPMS AND DOESN'T SHIFT RIGHT WHEN IN MANUAL

IT DRIVES PERFECTLY FINE.

t.  **DATE OF INCIDENT:** April 30, 2020
**DATE COMPLAINT FILED:** April 27, 2020
**NHTSA/ODI ID:** 11322793
**SUMMARY:** I WAS DRIVING ON THE HIGHWAY AND WITH NO WARNING THE VEHICLE LOST PRESSURE WHEN PRESSING ON THE GAS PEDDLE TO DRIVE TO MAINTAIN SPEED LIMIT WHEN DRIVING THE CAR. THE TRANSMISSION FLUID WAS CHECKED AND THERE WAS THE RECOMMENDED LEVEL OF TRANSMISSION FLUID. MECHANIC STATED ERROR CODE P0868. PER MECHANIC/TRANSMISSION SPECIALIST THIS IS A KNOWN PROBLEM WITH Mitsubishi TRANSMISSIONS AND THEY ARE ONLY ABLE TO GET THE TRANSMISSION FROM A DEALER. PLEASE NOTE THAT HIS HAS OCCURRED TO OTHER 2014 Mitsubishi OUTLANDERS WITH 50,000 OR LESS THAT WERE PURCHASED AT THE LANCASTER Mitsubishi IN LANCASTER, PA.

u.  **DATE OF INCIDENT:** April 4, 2020
**DATE COMPLAINT FILED:** April 1, 2020
**NHTSA/ODI ID:** 11320185
**SUMMARY:** SPEED DROPPED AND WON'T GO OUT OF SECOND GEAR, MECHANIC SAYS ALL OF THESE TRANSMISSIONS ARE BAD AND DANGEROUS, HAPPENED ON CITY STREET

v.  **DATE OF INCIDENT:** June 28, 2019
**DATE COMPLAINT FILED:** May 23, 2019
**NHTSA/ODI ID:** 11223130
**SUMMARY:** TL* THE CONTACT OWNS A 2014 Mitsubishi OUTLANDER. WHILE DRIVING, A MESSAGE FLASHED INDICATING TO SLOW DOWN BECAUSE THE TRANSMISSION WAS OVERHEATING. THE VEHICLE WAS NOT TAKEN TO A DEALER. THE VEHICLE WAS NOT INCLUDED IN NHTSA CAMPAIGN NUMBER: 16V563000 (POWER TRAIN); ALTHOUGH, THE VEHICLE EXHIBITED THE SAME FAILURE. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 72,000.

w. **DATE OF INCIDENT:** June 18, 2019
**DATE COMPLAINT FILED:** May 17, 2019
**NHTSA/ODI ID:** 11220937
**SUMMARY:** TOOK VEHICLE IN TO DEALER DUE TO A VIBRATION COMING FROM TRANSMISSION, AND ALSO, MY VEHICLE WOULD BE SLUGGISH WHEN IT WARMED UP. MOST CONCERNING, WAS WHEN SLOWING AT AN INTERSECTION TO TURN, AND THEN PRESSING THE GAS TO ACCELERATE, THE VEHICLE WOULD BE HESITANT. THIS ALMOST RESULTED IN A CAR ACCIDENT. BASED ON OTHER REVIEWERS, I FIND THIS TO BE A CONCERN FOR MORE THAN JUST MYSELF. I HAD TO PURCHASE A BRAND NEW TRANSMISSION AT $7,100. TOTAL MILES IS 56,000.

x. **DATE OF INCIDENT:** August 25, 2016
**DATE COMPLAINT FILED:** August 25, 2016
**NHTSA/ODI ID:** 10898578
**SUMMARY:** TL* THE CONTACT OWNS A 2014 Mitsubishi OUTLANDER. WHILE DRIVING 30 MPH, THE ACCELERATION SEIZED AND WOULD NOT RESPOND AFTER A STOP. THE VEHICLE WAS TAKEN TO AN INDEPENDENT MECHANIC WHO DIAGNOSED THAT THE ACCELERATION WAS NORMAL. THE VEHICLE WAS NOT DIAGNOSED NOR REPAIRED. THE FAILURE OCCURRED EVERYDAY SINCE THE VEHICLE WAS PURCHASED FROM A USED CAR LOT. THE APPROXIMATE FAILURE MILEAGE WAS 23,000.

**Customer Complaints on Third-Party Websites**

72.     Similarly, complaints posted by consumers in internet forums demonstrate that the defect is widespread and dangerous and that it can manifest without warning and/or suitable repair. The complaints also indicate Mitsubishi's awareness of the problems with the transmission and how potentially dangerous the defect is for consumers. The following are a sample of consumer complaints (spelling and grammar mistakes remain as found in the original):

73.     On mirageforum.com, a consumer of a 2015 Mitsubishi Mirage posted the following:

The issue I'm having is that my CVT automatic transmission is jerky and clunky. Whenever I come to a stop it jerks into first gear after the car has completely stop. This is the most noticeable jerk. Other times, it will shift out of no where when going 40-60mph…after a new transmission was put in, or so they say, it had MORE problems than before. The gear shifter was not working properly…and I was still having the same exact jerking issues as before.

74.    On mitsubishiforum.com, a consumer posted the following:

I have a 2014 Outlander Sport. 12 weeks ago at 110,000, the car started whining on acceleration and within minutes the transmission started slipping. Transmission light came on. Brought it to my mechanic in Underhill and he said the transmission was gone.

75.    On carproblemzoo.com, a consumer posted the following:

When driving at city street speed of 25 mph and under my car shakes so much and does not accelerate and feels like it is going to shut down. On 3 occasions I was rear ended because of this and one time was with a huge sanitation truck with my children inside the car…it is a very scary situation and I just bought this car about a year ago.

76.    On carproblemzoo.com, another consumer posted the following:

The car started shaking profusely while driving. I pulled over and it was loud. I turned off the car and everything seemed normal. I started driving and after about 100yards it started shaking and wouldn't accelerate. I was on access road driving. It came all of a sudden.

77.    On carproblemzoo.com, another consumer posted the following:

This happens almost all the time - when driving at city street speed of 25 mph and under my car shakes so much and does not accelerate and feels like it is going to shut down. On 3 occasions I was rear ended because of this and one time was with a huge sanitation truck with my children inside the car. I have taken this car to the dealer and the Mitsubishi dealer to be looked at and help to no avail it still does it. I have reported this to Mitsubishi motors and was given a case number but to date no one has contacted me nor helped me. I am scared for the safety of my family and myself - it is a very scary situation and I just bought this car about a year ago. Help me because no one else does.

78.    On carproblemzoo.com, another consumer posted the following:

Engine rev'd high and low without affecting speed of vehicle. Vehicle lost acceleration and came to a stop. Restarting the vehicle allowed some movement but the problem persisted. Dealership checking the vehicle said the transmission needed to be replaced at a cost of $9,700

79.    On carproblemzoo.com, another consumer posted the following:

My 2016 Outlander started having a burning plastic smell. I made a trip back home and thankfully made it safely because I started having issues with accelerating. I would push the gas gently and barely go but my car would rev up to 4-5 rpms. I could put my foot to the floor and it wouldn't speed up at all. After checking the transmission fluid and seeing it was on the lower side we added a little more in hopes it would help but it did not. I was low on gas after my trip so I drove to the closet store so it wouldn't be sitting with no gas and at this point the transmission service required warning came up. It started revving up even worse with the

1  |  slightest touch of the gas and I could barley get it to back out of
2  |  a spot or take off from a stop sign. We were trying to get it to a
3  |  neutral location that we knew it would be safe and while drinking
4  |  it there it started jumping and the check engine light came on. I
5  |  had it towed to a repair shop who verified it is a transmission issue
6  |  but said they recommend a dealer fix only. My car is a 2016, had
7  |  1 previous owner and only has 58347 miles on it.

80.   On carproblemzoo.com, another consumer posted the following:

> While driving the vehicle surges forwards like it is having difficult shifting gears or accelerating . It happens while driving 40 miles . Al while at a stand still in traffic it shakes and vibrates like it wants to stall then pulls forward . The the transmission light flashes on then goes away.

**Mitsubishi Had Superior and Exclusive Knowledge of the CVT Defect**

81.   Mitsubishi had superior and exclusive knowledge of the CVT Defect and knew or should have known that the defect was not known or reasonably discoverable by Plaintiffs and Class Members before they purchased or leased the Class Vehicles.

82.   Discovery will show that before Plaintiffs purchased their Class Vehicles, and since at least 2014, Mitsubishi knew about the CVT Defect through sources not available to consumers, including pre-release testing data, early consumer complaints to Mitsubishi and its dealers who are their agents for vehicle repairs, consumer complaints regarding earlier model years equipped with the same CVT, testing conducted in response to those complaints, high failure rates and replacement part sales data, consumer complaints to NHTSA (which Mitsubishi monitors), by developing TSBs in an effort to address the CVT Defect, and through other aggregate data from Mitsubishi dealers about the problem. TSBs

1    are issued exclusively to Mitsubishi's dealerships and service providers and are

2    not disseminated to consumers, even if their vehicles receive services as outlined

3    in the bulletins.

4        83.    Mitsubishi is experienced in the design and manufacture of consumer

5    vehicles. As an experienced manufacturer, Mitsubishi conducts tests, including

6    pre-sale durability testing, on incoming components, including the transmission,

7    to verify the parts are free from defect and align with Mitsubishi's specifications.

8    Thus, Mitsubishi knew or should have known the transmission was defective and

9    prone to put drivers in a dangerous position due to the inherent risk of the CVT

10   Defect.

11       84.    Additionally, discovery will show that Mitsubishi knew of the impact

12   of this defect from the sheer number of reports received from dealerships.

13   Mitsubishi's customer relations department, which interacts with individual

14   dealerships to identify potential common defects, has received numerous reports

15   regarding the defect, which led to the release of the TSBs. Mitsubishi's customer

16   relations department also collects and analyzes field data including, but not limited

17   to, repair requests made at dealerships, technical reports prepared by engineers

18   who have reviewed vehicles for which warranty coverage is being requested, parts

19   sales reports, and warranty claims data.

20       85.    Defendants' warranty department similarly analyzes and collects data

21   submitted by its dealerships to identify warranty trends in its vehicles. It is

22   Defendants' policy that when a repair is made under warranty the dealership must

23   provide Mitsubishi with detailed documentation of the problem and a complete

24   disclosure of the repairs employed to correct it. Dealerships have an incentive to

25   provide detailed information to Defendants, because they will not be reimbursed

26   for any repairs unless the justification for reimbursement is sufficiently detailed.

27       86.    In July 2016, Mitsubishi Motors North America, Inc. announced that,

28   following an investigation into CVT-caused hesitation that Mitsubishi began in

January 2016, Mitsubishi would be issuing a safety recall to address hesitation in the following Class Vehicles: 2015 Mitsubishi Outlander Sport vehicles built between June 25, 2014 and November 25, 2015, 2016; Mitsubishi Lancer vehicles built between October 12, 2015 and April 27, 2016; 2016 Mitsubishi Outlander vehicles built between May 11, 2015 and April 26, 2016; and 2016 Mitsubishi Outlander Sport vehicles built between January 11, 2016 and July 8, 2016. In the announcement, Mitsubishi admitted that this CVT-caused hesitation "could be a safety issue depending on the driving situation," and that, thus, a safety recall was required. As part of its investigation, Mitsubishi admitted that, due to a range switch signal loss, the CVT-ECU (the CVT's control unit) was improperly communicating with the engine-ECU "to reduce its torque output to prevent "shift-shock" and slippage of the CVT metal belt," resulting in "unexpected reduction in available acceleration." Mitsubishi also admitted that "unexpected reduction in available acceleration during everyday driving, such as acceleration from a stop, merging on to a freeway, or turning left against traffic, could result in an increased risk of an accident. The recall, which was issued in August 2016, directed vehicle owners to bring their vehicles to Mitsubishi dealerships to have their CVT-ECU (the control unit that controls the CVT's function) recalibrated. Mitsubishi also made a component change in production in an effort to address the range switch signal loss. However, discovery will show that this recall and production change did not resolve the CVT Defect.

87.    In April 2020, Mitsubishi issued TSB 20-23-001 for certain Class Vehicles. The TSB was titled "Potential Transmission Shudder/Surge with Possible DTC (CVT-8)." Specifically, the TSB was issued to correct "shudder or surge condition possibly caused by poor reaction of the hydraulic pressure circuit. With continued driving under these conditions, the CVT belt may slip repeatedly when accelerating, and abrasion powder may enter the hydraulic pressure circuit, causing a warning light to turn on with one of the following DTCs: P0776, P0730,

P0741, P084A, P0969, P2719. The shudder/surge condition may also be described as engine flare, lack of acceleration, and/or car shake." The repair procedure provided was either replacing the entire CVT, or replacing various CVT components, such as the CVT control valve and valve-body assembly. Discovery will show that the problem persisted, and this TSB was superseded in June 2020, with TSB 20-23-001REV. This revised TSB addressed the same concerns but expanded the vehicles affected.

88.    Discovery will show that each TSB issued by Mitsubishi was approved by managers, directors, and/or executives at Mitsubishi. Therefore, discovery will show that Mitsubishi's managers, directors, and/or executives knew, or should have known, about the CVT Defect, but refused to disclose the CVT Defect to prospective purchasers and owners, and/or actively concealed the CVT Defect.

89.    The existence of the CVT Defect is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a Class Vehicle. Had Plaintiffs and other Class Members known of the CVT Defect, they would have paid less for the Class Vehicles or would not have purchased or leased them.

90.    Reasonable consumers, like Plaintiffs, expect that a vehicle's transmission is safe, will function in a manner that will not pose a safety risk, and is free from defects. Plaintiffs and Class Members further reasonably expect that Mitsubishi will not sell or lease vehicles with known safety defects, such as the CVT Defect, and will disclose any such defects to its consumers when it learns of them. They did not expect Mitsubishi to conceal and fail to disclose the CVT Defect to them, and to then continually deny its existence.

**Mitsubishi Has Actively Concealed the CVT Defect**

91.    Despite its knowledge of the CVT Defect in the Class Vehicles, Mitsubishi actively concealed the existence and nature of the defect from Plaintiffs

and Class Members. Specifically, Mitsubishi failed to disclose or actively concealed at and after the time of purchase, lease, or repair:

>    (a)    any and all known material defects or material nonconformity of the Class Vehicles, including the defects pertaining to the CVT;

>    (b)    that the Class Vehicles, including the CVT, were not in good working order, were defective, and were not fit for their intended purposes; and

>    (c)    that the Class Vehicles and their transmissions were defective, despite the fact that Mitsubishi learned of such defects as early as 2014.

92.    Discovery will show that when consumers present their Class Vehicles to an authorized Mitsubishi dealer for transmission repairs, rather than repair the problem under warranty, Mitsubishi dealers either inform consumers that their vehicles are functioning properly or conduct repairs that merely mask the CVT Defect.

93.    Mitsubishi has caused Plaintiffs and Class Members to expend money and/or time at its dealerships to diagnose, repair or replace the Class Vehicles' CVT and/or related components, despite Mitsubishi's knowledge of the CVT Defect.

## Defendants Have Unjustly Retained a Substantial Benefit

94.    Discovery will show that Plaintiffs allege that Defendants unlawfully failed to disclose the alleged defect to induce them and other putative Class Members to purchase or lease the Class Vehicles.

95.    Plaintiffs further allege that Defendants thus engaged in deceptive acts or practices pertaining to all transactions involving the Class Vehicles, including Plaintiffs'.

96.    As discussed above, therefore, Plaintiffs allege that Defendants unlawfully induced them to purchase their respective Class Vehicles by concealing a material fact (the defective CVT) and that they would have paid less for the Class

1    Vehicle, or not purchased them at all, had they known of the defect.

2        97.    Accordingly, Defendants' ill-gotten gains, benefits accrued in the

3    form of increased sales and profits resulting from the material omissions that did -

4    and likely will continue to - deceive consumers, should be disgorged.

5                **Mitsubishi Authorized Dealers are Defendants' Agents**

6        98.    In promoting, selling, and repairing its defective vehicles, Mitsubishi

7    acts through numerous authorized dealers who act as, and represent themselves to

8    the public as, exclusive Mitsubishi representatives and agents. That the dealers act

9    as Mitsubishi's agents is demonstrated by the following facts:

10            (a)    The authorized Mitsubishi dealerships complete all service and

11        repair according to Mitsubishi's instructions, which Mitsubishi issues to its

12        authorized dealerships through service manuals, technical service bulletins

13        ("TSBs"), technical tips ("TT"), and other documents;

14            (b)    Technicians at Mitsubishi dealerships are required to go to at

15        least yearly Mitsubishi-given trainings in order to remain certified to work

16        on Mitsubishi-branded vehicles, at which they receive training on

17        proprietary systems, which provides guided, step-by-step instructions on

18        diagnosing and repairing Mitsubishi-branded vehicles;

19            (c)    Consumers are able to receive services under Mitsubishi's

20        issued New Vehicle Limited Warranty only at Mitsubishi's authorized

21        dealerships, and they are able to receive these services because of the

22        agreements between Mitsubishi and the authorized dealers. These

23        agreements provide Mitsubishi with a significant amount of control over the

24        actions of the authorized dealerships;

25            (d)    The warranties provided by Mitsubishi for the defective

26        vehicles direct consumers to take their vehicles to authorized dealerships for

27        repairs or services;

28            (e)    Mitsubishi dictates the nature and terms of the purchase

1    contracts entered into between its authorized dealers and consumers;

2         (f)    Mitsubishi controls the way in which its authorized dealers can

3    respond to complaints and inquiries concerning defective vehicles, and the

4    dealerships are able to perform repairs under warranty only with

5    Mitsubishi's authorization;

6         (g)    Mitsubishi has entered into agreements and understandings

7    with its authorized dealers pursuant to which it authorizes and exercises

8    substantial control over the operations of its dealers and the dealers'

9    interaction with the public, particularly the advertising; and

10        (h)    Mitsubishi implemented its express and implied warranties as

11   they relate to the defects alleged herein by instructing authorized Mitsubishi

12   dealerships to address complaints of the Defect by prescribing and

13   implementing the relevant TSBs cited herein.

14        99.    Indeed, Mitsubishi's warranty booklets make it abundantly clear that

15   Mitsubishi's authorized dealerships are its agents for vehicle sales and service. The

16   booklets, which are plainly written for the consumers, not the dealerships, tell the

17   consumers that: "To obtain warranty service, you must return your Vehicle to any

18   Authorized Mitsubishi Motors Dealer or Authorized Service Center"; "the part will

19   be repaired or replaced by any Authorized Mitsubishi Motors Dealer or Authorized

20   Service Center, using new or remanufactured Authorized Mitsubishi Motors parts;"

21   and "coverage applies only to … parts sourced from and installed by an Authorized

22   Mitsubishi Motors Dealer."

23        100.   Accordingly, as the above paragraphs demonstrate, the authorized

24   dealerships are agents of Mitsubishi. Plaintiffs and each of the members of the

25   Class have had sufficient direct dealings with either Mitsubishi or its agent

26   dealerships to establish privity of contract between Mitsubishi, on one hand, and

27   Plaintiffs and each of the members of the Class, on the other hand. This establishes

28   privity with respect to the express and implied warranty between Plaintiffs and

Mitsubishi. It also establishes that Plaintiffs were dealing with Mitsubishi through its authorized agent dealerships when they were given the New Vehicle Limited Warranty associated with their vehicle, without any ability to negotiate the terms of that Warranty.

## Defendants' Warranties were Unconscionable

101.    Plaintiffs signed contracts for sale with Mitsubishi authorized dealers, and with that sale, were presented with the terms of the Warranty as drafted by Mitsubishi. While Plaintiffs have some ability to negotiate price of the vehicle, they have no ability to negotiate the terms of the Warranty. Plaintiffs had no bargaining power with respect to the Warranty, were presented with it as a *fait accompli*, and had to accept it in the exact form in which it was presented to them, which occurred after the vehicle purchase transaction was completed. Plaintiffs had no meaningful choice regarding any aspect of the Warranty or its terms, including durational limitations of time and mileage. The terms of the warranty unreasonably favored Defendants over Plaintiffs and the members of the Class; a gross disparity in bargaining power existed as between Defendants and Class members; and Defendants knew or should have known that the CVT Defect would manifest in the Class Vehicles both before and after the Warranty, thereby rendering the time and mileage limitations insufficient, inadequate, and unconscionable.

102.    Mitsubishi drafted the terms of the Warranty in part by using its exclusive, superior knowledge of the existence and likely manifestation of the Defect. Plaintiffs and Class Members were entirely ignorant of the Defect when purchasing their Vehicles and when presented with the Warranty. Plaintiffs' acceptance of the Warranty and its terms, including any disclaimers or durational limits, was neither knowing nor voluntary. Defendants knew or should have known at the time of sale that the Class Vehicles were defective and would fail prematurely solely because of a defect in design, materials, and workmanship, to wit, the CVT Defect. Plaintiffs and Class Members, on the other hand, had no notice of or ability

1  to detect the Defect prior to purchasing the Class Vehicles. For this reason, the

2  terms of the Warranty unreasonably favored Defendants over Plaintiffs and Class

3  Members, and Plaintiffs' and Class Members' acceptance of the Warranty's

4  durational limitations, to the extent they are found to apply so as to exclude

5  instances where the Defect manifested outside of them, was neither knowing nor

6  voluntary, thereby rendering such limitation unconscionable and ineffective.

7       103.   Mitsubishi's exclusive superior knowledge of the existence of the

8  Defect and when it would manifest influenced its analysis of the Defect and

9  whether it should pay for a recall (*i.e.,* if a defect is more likely to manifest within

10  the durational limits, a recall is only fractionally more expensive than warranty

11  repairs; if it is more likely to manifest outside those limits, a recall is exponentially

12  more expensive than warranty repairs.)

13       104.   Plaintiffs were also not aware and could not have been aware that

14  Mitsubishi would willfully not inform them of the Defect which affects the safety

15  of their vehicles and that the Defect could manifest outside of the durational limit

16  of the Warranty, despite Mitsubishi's knowledge of this. *See Carlson v. Gen.*

17  *Motors Corp.*, 883 F.2d 287 (4th Cir. 1989), cert. denied, 495 U.S. 904 (1990)

18  ("'proof that GM knew of and failed to disclose major, inherent product defects

19  would obviously suggest that its imposition of the challenged 'durational

20  limitations' on implied warranties constituted 'overreaching,' and that the

21  disclaimers themselves were therefore 'unconscionable.'")

22                    **TOLLING OF THE STATUTES OF LIMITATIONS**

23       105.   Any applicable statute of limitations has been tolled by Mitsubishi's

24  knowing and active concealment of the CVT Defect and misrepresentations and

25  omissions alleged herein. Through no fault or lack of diligence, Plaintiffs and

26  members of the Class were deceived regarding the Class Vehicles and could not

27  reasonably discover the Defect or Mitsubishi's deception with respect to the

28  Defect. Mitsubishi and its agents continue to deny the existence and extent of the

Defect, even when questioned by Plaintiffs and members of the Class.

106.   Plaintiffs and members of the Class did not discover and did not know of any facts that would have caused a reasonable person to suspect that Defendants were concealing a defect and/or the Class Vehicles contained the CVT Defect and the corresponding safety risk. As alleged herein, the existence of the CVT Defect was material to Plaintiffs and members of the Class at all relevant times. Within the time period of any applicable statutes of limitations, Plaintiffs and members of the Class could not have discovered through the exercise of reasonable diligence the existence of the Defect or that the Defendants were concealing the Defect.

107.   At all times, Mitsubishi is and was under a continuous duty to disclose to Plaintiffs and members of the Class the true standard, quality, and grade of the Class Vehicles and to disclose the CVT Defect and corresponding safety risk due to their exclusive and superior knowledge of the existence and extent of the CVT in Class Vehicles.

108.   Mitsubishi knowingly, actively, and affirmatively concealed the facts alleged herein. Plaintiffs and members of the Class reasonably relied on Mitsubishi's knowing, active, and affirmative concealment.

109.   For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Mitsubishi's fraudulent concealment, and Mitsubishi is estopped from relying on any statutes of limitations in defense of this action.

## CLASS ACTION ALLEGATIONS

110.   Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

111.   The Class and Sub-Classes are defined as:

**Class**:  All persons and entities in the United States who purchased or leased a Class Vehicle (the "Nationwide Class" or "Class").

**California Sub-Class**:  All members of the Nationwide Class who reside in the State of California.

**CLRA Sub-Class**:  All members of the California Sub-Class who are "consumers" within the meaning of California Civil Code § 1761(d).

**Implied Warranty Sub-Class**:  All members of the Nationwide Class who purchased or leased their vehicles in the State of California.

**Michigan Sub-Class**:  All members of the Nationwide Class who are residents of Michigan or who purchased or leased their Class Vehicle in the State of Michigan.

**New York Sub-Class**:  All members of the Nationwide Class who are residents of New York or who purchased or leased their Class Vehicle in the State of New York.

112.  Excluded from the Class and Sub-Classes are:  (1) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) any Judge sitting in the presiding state and/or federal court system who may hear an appeal of any judgment entered; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiffs reserve the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that the Class and Sub-Classes should be expanded or otherwise modified.

113.  <u>Numerosity</u>:  Although the exact number of Class Members is uncertain, and can only be ascertained through appropriate discovery, the number is significant enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in Defendants' possession, custody, or control, as well as

CLASS ACTION COMPLAINT

1   from records kept by the Department of Motor Vehicles.

2       114.  Typicality:  Plaintiffs' claims are typical of the claims of the Class in

3   that Plaintiffs, like all Class Members, purchased or leased a Class Vehicle

4   designed, manufactured, and distributed by Mitsubishi. The representative

5   Plaintiffs, like all Class Members, have been damaged by Defendants' misconduct

6   in that they have incurred or will incur the cost of repairing or replacing the

7   defective transmission and/or its components. Furthermore, the factual bases of

8   Mitsubishi's misconduct are common to all Class Members and represent a

9   common thread resulting in injury to the Class.

10      115.  Commonality:   There are numerous questions of law and fact

11  common to Plaintiffs and the Class that predominate over any question affecting

12  Class Members individually. These common legal and factual issues include the

13  following:

14          (a)   Whether Class Vehicles suffer from defects relating to the

15          CVT;

16          (b)   Whether the defects relating to the CVT constitute an

17          unreasonable safety risk;

18          (c)   Whether Defendants knew about the defects pertaining to the

19          CVT and, if so, how long Defendants have known of the defect;

20          (d)   Whether the defective nature of the CVT constitutes a material

21          fact;

22          (e)   Whether Defendants have had an ongoing duty to disclose the

23          defective nature of the CVT to Plaintiffs and Class Members;

24          (f)   Whether Plaintiffs and the other Class Members are entitled to

25          equitable relief, including a preliminary and/or a permanent

26          injunction;

27          (g)   Whether Defendants knew or reasonably should have known of

28          the defects pertaining to the CVT before they sold and leased Class

Vehicles to Class Members;

(h)   Whether Defendants should be declared financially responsible for notifying the Class Members of problems with the Class Vehicles and for the costs and expenses of repairing and replacing the defective CVT and/or its components;

(i)   Whether Defendants are obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective CVT and/or its components;

(j)   Whether Defendants breached the implied warranty of merchantability pursuant to the Magnuson-Moss Warranty Act;

(k)   Whether Defendants breached the implied warranty of merchantability pursuant to the Song-Beverly Act;

(l)   Whether Defendants breached the implied warranty of merchantability under Michigan law;

(m)   Whether Defendants breached the implied warranty of merchantability under New York law;

(n)   Whether Defendants breached their express warranties under California Law;

(o)   Whether Defendants breached their express warranties under New York Law;

(p) Whether Defendants breached their express warranties under Michigan Law; and

(q) Whether Defendants breached express warranties pursuant to the Magnuson-Moss Warranty Act.

116.   <u>Adequate Representation</u>:   Plaintiffs will fairly and adequately protect the interests of the Class Members. Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to vigorously prosecute this action.

117.    <u>Predominance and Superiority</u>:  Plaintiffs and Class Members have all suffered, and will continue to suffer, harm and damages as a result of Defendants' unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue unabated without remedy or relief. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that it will conserve the resources of the courts and the litigants and promote consistency and efficiency of adjudication.

## FIRST CAUSE OF ACTION

### (Violation of California's Consumers Legal Remedies Act, California Civil Code § 1750, *et seq*.)

### (On Behalf of the CLRA Sub-Class)

118.    Plaintiff Brown incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

119.    Plaintiff Brown brings this cause of action on behalf of himself and the CLRA Sub-Class.

120.    Defendants are "persons" as defined by California Civil Code § 1761(c).

121.    Plaintiff Brown and the CLRA Sub-Class members are "consumers" within the meaning of California Civil Code § 1761(d) because they purchased their Class Vehicles primarily for personal, family, or household use.

122.    By failing to disclose and concealing the defective nature of the CVT

from Plaintiff Brown and prospective CLRA Sub-Class members, Defendants violated California Civil Code § 1770(a), as they represented that the Class Vehicles and their transmissions had characteristics and benefits that they do not have, and represented that the Class Vehicles and their transmissions were of a particular standard, quality, or grade when they were actually of another. *See* Cal. Civ. Code §§ 1770(a)(5) & (7).

123. Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

124. Defendants knew that the Class Vehicles and their transmissions suffered from an inherent defect, were defectively designed, and were not suitable for their intended use.

125. As a result of their reliance on Defendants' omissions, owners and/or lessees of the Class Vehicles, including Plaintiff Brown, suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the CVT Defect, Plaintiff Brown and the CLRA Sub-Class members were harmed and suffered actual damages in that the Class Vehicles' transmissions and their components are substantially certain to fail before their expected useful life has run.

126. Defendants were under a duty to Plaintiff Brown and the CLRA Sub-Class members to disclose the defective nature of the transmission and/or the associated repair costs because:

(a) Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' transmission;

(b) Plaintiff Brown and the CLRA Sub-Class members could not reasonably have been expected to learn or discover that their transmission had a dangerous safety defect until it manifested; and

(c)    Defendants knew that Plaintiff Brown and the CLRA Sub-Class members could not reasonably have been expected to learn of or discover the safety defect.

127.    In failing to disclose the defective nature of the transmission, Defendants knowingly and intentionally concealed material facts and breached its duty not to do so.

128.    The facts Defendants concealed from or failed to disclose to Plaintiff Brown and the CLRA Sub-Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay less. Had Plaintiff Brown and the CLRA Sub-Class members known that the Class Vehicles' transmission was defective, they would not have purchased or leased the Class Vehicles or would have paid less for them.

129.    Plaintiff Brown and the CLRA Sub-Class members are reasonable consumers who do not expect the transmissions installed in their vehicles to exhibit problems such as the CVT Defect. This is the reasonable and objective consumer expectation relating to a vehicle's transmission.

130.    As a result of Defendants' conduct, Plaintiff Brown and the CLRA Sub-Class members were harmed and suffered actual damages in that the Class Vehicles experienced and will continue to experience problems such as the CVT Defect.

131.    As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiff Brown and the CLRA Sub-Class members suffered and will continue to suffer actual damages.

132.    Plaintiff Brown and the CLRA Sub-Class members are entitled to equitable relief.

133.    Plaintiff Brown provided Defendants with notice of its violations of the CLRA pursuant to California Civil Code § 1782(a). If, within 30 days,

1  Defendants fails to provide appropriate relief for its violations of the CLRA,
2  Plaintiff Brown will amend this Complaint to seek monetary, compensatory, and
3  punitive damages, in addition to the injunctive and equitable relief that he seeks
4  now on behalf of himself and the CLRA Sub-Class.

**SECOND CAUSE OF ACTION**

**(Violation of California Business & Professions Code § 17200, *et seq.*)**

**(On Behalf of the California Sub-Class)**

8  134.   Plaintiff Brown incorporates by reference the allegations contained in
9  the preceding paragraphs of this Complaint.

10  135.   Plaintiff Brown brings this cause of action on behalf of himself and
11  the California Sub-Class (CA Sub-Class).

12  136.   As a result of their reliance on Defendants' omissions, owners and/or
13  lessees of the Class Vehicles, including Plaintiff Brown, suffered an ascertainable
14  loss of money, property, and/or value of their Class Vehicles. Additionally, as a
15  result of the CVT Defect, Plaintiff Brown and the CA Sub-Class members were
16  harmed and suffered actual damages in that the Class Vehicles' transmission
17  and/or its components are substantially certain to fail before their expected useful
18  life has run.

19  137.   California Business & Professions Code § 17200 prohibits acts of
20  "unfair competition," including any "unlawful, unfair or fraudulent business act
21  or practice" and "unfair, deceptive, untrue or misleading advertising."

22  138.   Plaintiff Brown and the CA Sub-Class members are reasonable
23  consumers who do not expect their transmissions to exhibit problems such as
24  shuddering and hesitation on acceleration, premature wear, and frequent
25  replacement or repair.

26  139.   Defendants knew the Class Vehicles and their transmissions were
27  defectively designed or manufactured, would fail prematurely, and were not
28  suitable for their intended use.

CLASS ACTION COMPLAINT

140.   In failing to disclose the CVT Defect, Defendants have knowingly and intentionally concealed material facts and breached its duty not to do so.

141.   Defendants were under a duty to Plaintiff Brown and the CA Sub-Class members to disclose the defective nature of the Class Vehicles and their transmissions because:

(a)    Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' transmissions; and

(b)    Defendants actively concealed the defective nature of the Class Vehicles and their transmissions from Plaintiff Brown and the CA Sub-Class.

142.   The facts Defendants concealed from or failed to disclose to Plaintiff Brown and the CA Sub-Class members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Class Vehicles. Had they known of the CVT Defect, Plaintiff Brown and the other CA Sub-Class members would have paid less for Class Vehicles or would not have purchased or leased them at all.

143.   Defendants continued to conceal the defective nature of the Class Vehicles and their transmissions even after Plaintiff Brown and the other CA Sub-Class members began to report problems.

144.   Defendants' conduct was and is likely to deceive consumers.

145.   Defendants' acts, conduct, and practices were unlawful, in that they constituted:

(a)    Violations of California's Consumers Legal Remedies Act;

(b)    Violations of the Song-Beverly Consumer Warranty Act;

(c)    Violations of the Magnuson-Moss Warranty Act; and

(d)    Breach of Express Warranty under California Commercial Code § 2313.

146.   By their conduct, Defendants have engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

147.   Defendants' unfair or deceptive acts or practices occurred repeatedly in Defendants' trade or business and were capable of deceiving a substantial portion of the purchasing public.

148.   As a direct and proximate result of Defendants' unfair and deceptive practices, Plaintiff Brown and the other CA Sub-Class members have suffered and will continue to suffer actual damages.

149.   Defendants have been unjustly enriched and should be required to make restitution to Plaintiff Brown and the other CA Sub-Class members pursuant to §§ 17203 and 17204 of the Business & Professions Code.

## THIRD CAUSE OF ACTION

### (Breach of Implied Warranty Pursuant to Song-Beverly Consumer Warranty Act, California Civil Code §§ 1792 and 1791.1, *et seq.*)

### (On Behalf of the Implied Warranty Sub-Class)

150.   Plaintiff Brown incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

151.   Plaintiff Brown brings this cause of action against Defendants on behalf of himself and the Implied Warranty Sub-Class (IW Sub-Class).

152.   Defendants were at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

153.   Defendants provided Plaintiff Brown and the IW Sub-Class members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles and their transmissions suffered from an inherent defect at the time of sale and thereafter and are not fit for their particular purpose of providing safe and reliable transportation.

154.   Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for their intended use.   This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their transmissions, which were manufactured, supplied, distributed, and/or sold by Mitsubishi, would provide safe and reliable transportation; and (ii) a warranty that the Class Vehicles and their transmissions would be fit for their intended use.

155.   Contrary to the applicable implied warranties, the Class Vehicles and their transmissions at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff Brown and the IW Sub-Class members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including the defective transmissions.

156.   The CVT Defect is inherent and was present in each Class Vehicle at the time of sale.

157.   As a result of Defendants' breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the CVT Defect, Plaintiff Brown and the IW Sub-Class members were harmed and suffered actual damages in that the Class Vehicles' transmissions and/or its components are substantially certain to fail before their expected useful life has run.

158.   Defendants' actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

## FOURTH CAUSE OF ACTION

### (Breach of Express Warranty Pursuant to Cal. Com. Code §§ 2313, 10210)

### (On Behalf of the California Sub-Class)

159.   Plaintiff Brown incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

160.   Plaintiff Brown brings this cause of action on behalf of himself and the CA Sub-Class.

161.   Defendants provided all purchasers and lessees of the Class Vehicles with an express warranty described *infra*, which became a material part of the bargain. Accordingly, Defendants' express warranty is an express warranty under California law.

162.   The transmission was manufactured and/or installed in the Class Vehicles by Defendants and is covered by the express warranty.

150.   In a section entitled "What is Covered," Defendants' express warranty provides, in relevant part, that the warranty covers "all parts of this Vehicle supplied by Mitsubishi[.]" The warranty further provides that if a "defect in materials or workmanship appears during the first 5 years or 60,000 odometer miles, the part will be repaired or replaced by any Authorized Mitsubishi Motors Dealer or Authorized Service Center, using new or remanufactured Authorized Mitsubishi Motors parts."

152.   Defendants breached the express warranties by selling and leasing Class Vehicles with CVTs that were defective, requiring repair or replacement within the warranty period, and refusing to honor the express warranty by repairing or replacing, free of charge, the CVT. In addition, when Defendants did agree to pay a portion of the costs, Defendants nevertheless breached the express warranty by simply replacing Plaintiff's and Class Members' defective CVTs with similarly defective CVTs, thus failing to "repair" the defect.

153.   Plaintiff was not required to notify Mitsubishi of the breach or was not required to do so because affording Mitsubishi a reasonable opportunity to cure its breach of written warranty would have been futile. Defendants were also on notice of the defect from complaints and service requests it received from Class Members, from repairs and/or replacements of the transmissions, and from other internal sources.

CLASS ACTION COMPLAINT

154.   As a direct and proximate cause of Defendants' breach, Plaintiff and the other Class Members have suffered, and continue to suffer, damages, including economic damages at the point of sale or lease. Additionally, Plaintiff and the other Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

155.   Plaintiff and the other Class Members are entitled to legal and equitable relief against Defendants, including actual damages, consequential damages, specific performance, attorneys' fees, costs of suit, and other relief as appropriate.

**FIFTH CAUSE OF ACTION**

**(Violations of the Michigan Consumer Protection Act,**

**Mich. Comp. Laws § 445.903, *et seq*.)**

**(On Behalf of the Michigan Sub-Class)**

163.   Plaintiff Lucassian, individually and on behalf of the Michigan Class, incorporates by reference all of the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

164.   Plaintiff Lucassian brings this claim individually and on behalf of the Michigan Class against Defendants.

165.   Plaintiff Lucassian and the Michigan Class members are "person[s]" within the meaning of the Mich. Comp. Laws. § 445.902(1)(d).

166.   At all relevant times, Defendants were "person[s]" engaged in "trade or commerce" within the meaning of the Mich. Comp. Laws § 445.902(1)(d) and (g).

167.   The Michigan Consumer Protection Act ("Michigan CPA") prohibits ""[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce ...." Mich. Comp. Laws § 445.903(1).

168.   Defendants engaged in unfair, unconscionable, or deceptive methods, acts or practices prohibited by the Michigan CPA, including: "(c) Representing

that goods or services have ... characteristics ... that they do not have ....;" "(e) Representing that goods or services are of a particular standard ... if they are of another;" "(i) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;" "(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;" "(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is;" and "(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." Mich. Comp. Laws § 445.903(1).

169. In the course of its business, Defendants concealed and suppressed material facts concerning the Class Vehicles' transmissions. Defendants failed to disclose the existence of the CVT Defect. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, and suppression or omission, in connection with the sale and lease of Class Vehicles.

170. Defendants knew the Class Vehicles and their transmissions were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

171. Defendants owed Plaintiff Lucassian and the Michigan Class a duty to disclose the CVT Defect because Defendants: (a) possessed superior and exclusive knowledge about the defect; (b) intentionally concealed the foregoing from Plaintiff Lucassian and the Michigan Class; and (c) made incomplete representations about the Class Vehicles while intentionally withholding material facts from Plaintiff Lucassian and the Michigan Class that contradicted these representations.

172.   Defendants' omissions were material because they were likely to deceive reasonable consumers.

173.   Defendants acted intentionally, knowingly, and maliciously to violate Michigan's CPA, and recklessly disregard Plaintiff's and the Michigan Class members' rights. Defendants' knowledge of the CVT Defect put them on notice that the Class Vehicles were not as advertised. Defendants' violations present a continuing risk to Plaintiff Lucassian and the Michigan Class members, as well as the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

174.   As a direct and proximate result of Defendants' violations of the Michigan CPA, Plaintiff Lucassian and the Michigan Class members have suffered injury-in-fact and/or actual damage.

175.   Plaintiff Lucassian and the Michigan Class members seek injunctive relief to enjoin Defendants from continuing its unfair and deceptive acts; monetary damages against Defendants measures as the greater of (a) actual damages in an amount to be determined at trial, and (b) statutory damages in the amount of $250 for Plaintiff Lucassian and each Michigan Class member; reasonable attorneys' fees; and any other just and proper relief available under Mich. Comp. Laws § 445.911.

176.   Plaintiff Lucassian and the Michigan Class members also seek punitive damages against Defendants because Defendants' conduct evidences an extreme deviation from reasonable standards. Defendants flagrantly, maliciously, and fraudulently misrepresented the reliability of the Class Vehicles, deceived Michigan Class members, and concealed material facts that only it knew. Defendants' conduct constitutes malice, oppression, and fraud warranting punitive damages.

**SIXTH CAUSE OF ACTION**

**(Breach of Express Warranty,**

**Mich. Comp. Laws § 440.2313, 440.2860)**

**(On Behalf of the Michigan Sub-Class)**

177.    Plaintiff Lucassian, individually and on behalf of the Michigan Class, incorporates by reference all of the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

178.    Plaintiff Lucassian brings this claim individually and on behalf of the Michigan Class against Defendants.

179.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Mich. Comp. Laws § 440.2104(1) and "seller[s]" of motor vehicles under § 440.2103(1)(c).

180.    With respect to leases, Defendants are and were at all relevant times "lessor[s]" of motor vehicles under Mich. Comp. Laws § 440.2803(1)(p).

181.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Mich. Comp. Laws §§ 440.2105(1) and 440.2803(1)(h).

182.    The transmissions were manufactured and/or installed in the Class Vehicles by Defendants and are covered by the express warranty.

183.    In a section entitled "What is Covered," Defendants' express warranty provides, in relevant part, that the warranty covers "all parts of this Vehicle supplied by Mitsubishi[.]" The warranty further provides that if a "defect in materials or workmanship appears during the first 5 years or 60,000 odometer miles, the part will be repaired or replaced by any Authorized Mitsubishi Motors Dealer or Authorized Service Center, using new or remanufactured Authorized Mitsubishi Motors parts."

184.    Defendants' express warranties regarding the Class Vehicles formed a basis of the bargain that was breached when Plaintiff Lucassian and the Michigan Class members purchased or leased the Class Vehicles with defective

transmissions.

185.  Plaintiff Lucassian and the Michigan Class members experienced defects within the warranty period. Despite the existence of the express warranties, Defendants failed to inform Plaintiff Lucassian and the Michigan Class members that the Class Vehicles were equipped with defective transmissions.

186.  Defendants breached the express warranty promising to repair or adjust defects in materials or workmanship of any part supplied by Defendants. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

187.  Plaintiff Lucassian reported his transmission failure to Defendants via their agents, Mitsubishi authorized repair facilities. In addition, Defendants were provided with notice of these issues by numerous NHTSA and consumer complaints filed against it, including the instant Complaint and similar legal proceedings, and has actual knowledge of the defect. Plaintiff Lucassian and members of the Michigan Sub-Class were not required to notify Mitsubishi of the breach because affording Mitsubishi a reasonable opportunity to cure its breach of warranty would have been futile. Mitsubishi was also on notice of the CVT Defect from the complaints and service requests it received from Plaintiff and the Class Members and through other internal sources.

188.  Nonetheless, Plaintiff Lucassian and members of the Michigan Sub-Class provided notice to Mitsubishi of the breach of express warranties when they took their vehicles to Mitsubishi -authorized providers of warranty repairs. Plaintiff Lucassian also provided notice to Mitsubishi of its breach of express warranty by letter dated November 4, 2021.

189.  As a direct and proximate result of Defendants' breach of express warranties, Plaintiff Lucassian and the Michigan Class members have been damaged in an amount to be determined at trial.

**SEVENTH CAUSE OF ACTION**

**(Breach of Implied Warranty of Merchantability,**

**Mich. Comp. Laws § 440.2314, 440.2860)**

**(On Behalf of the Michigan Sub-Class)**

190.    164.    Plaintiff Lucassian, individually and on behalf of the Michigan Class, incorporates by reference all of the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

191.    Plaintiff Lucassian brings this claim individually and on behalf of the Michigan Class against Defendants.

192.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Mich. Comp. Laws § 440.2104(1) and "seller[s]" of motor vehicles under § 440.2103(1)(c).

193.    With respect to leases, Defendants are and were at all relevant times "lessor[s]" of motor vehicles under Mich. Comp. Laws. S 440.2803(1)(p).

194.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Mich. Comp. Laws §§ 440.2105(1) and 440.2803(1)(h).

195.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Mich. Comp. Laws §§ 440.2314 and 440.2862.

196.    Defendants provided Plaintiff Lucassian and Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles and their transmissions suffered from an inherent defect at the time of sale and thereafter and are not fit for their particular purpose of providing safe and reliable transportation.

197.    Defendants impliedly warranted that the Class Vehicles were of

merchantable quality and fit for their intended use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their transmissions, which were manufactured, supplied, distributed, and/or sold by Mitsubishi would provide safe and reliable transportation; and (ii) a warranty that the Class Vehicles and their transmissions would be fit for their intended use.

198.   Contrary to the applicable implied warranties, the Class Vehicles and their transmissions at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff Lucassian and Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including the defective transmissions.

199.   The CVT Defect is inherent and was present in each Class Vehicle at the time of sale.

200.   Because of Defendants' breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, because of the CVT Defect, Plaintiff Lucassian and Class Members were harmed and suffered actual damages in that the Class Vehicles' transmissions are substantially certain to fail before their expected useful life has run.

201.   Plaintiff Lucassian and members of the Michigan Sub-Class were not required to notify Mitsubishi of the breach because affording Mitsubishi a reasonable opportunity to cure its breach of warranty would have been futile. Mitsubishi was also on notice of the CVT Defect from the complaints and service requests it received from Plaintiff Lucassian and the Class Members and through other internal sources.

202.   Nonetheless, Plaintiff Lucassian and members of the Michigan Sub-Class provided notice to Mitsubishi of the breach of implied warranties when they took their vehicles to Mitsubishi -authorized provider of warranty repairs. Plaintiff Lucassian also provided notice to Mitsubishi of its breach of implied warranty by

1   letter dated November 4, 2021.

2       203.   As a direct and proximate result of Defendants' breach of the implied

3   warranty of merchantability, Plaintiff Lucassian and the Michigan Class members

4   have been damaged in an amount to be determined at trial.

5                      **EIGHTH CAUSE OF ACTION**

6          **(Violations of New York General Business Law § 349)**

7                 **(On Behalf of the New York Sub-Class)**

8       204.   Plaintiff Hardy incorporates by reference all preceding allegations as

9   if fully set forth herein.

10      205.   Plaintiff Hardy brings this claim individually and on behalf of the

11  New York Subclass.

12      206.  New York's General Business Law § 349 makes unlawful

13  "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

14      207.   In the course of Mitsubishi's business, it willfully failed to disclose

15  and actively concealed the dangerous risk of the CVT Defect in Class Vehicles as

16  described above. Accordingly, Defendants engaged in unfair methods of

17  competition, unconscionable acts or practices, and unfair or deceptive acts or

18  practices as defined in N.Y. Gen. Bus. Law § 349, including engaging in conduct

19  likely to deceive.

20      208.   Mitsubishi's actions as set forth above occurred in the conduct of

21  trade or commerce.

22      209.  Because Mitsubishi's deception takes place in the context of

23  automobile safety, its deception affects the public interest. Further, Defendants'

24  unlawful conduct constitutes unfair acts or practices that have the capacity to

25  deceive consumers, and that have a broad impact on consumers at large.

26      210.   Mitsubishi's conduct proximately caused injuries to Plaintiff Hardy

27  and the other Class members.

28      211.   Plaintiff Hardy and the other Class members were injured as a result

of Defendants' conduct in that Plaintiff Hardy and the New York Subclass members overpaid for their Class Vehicles and did not receive the benefit of their bargain. These injuries are the direct and natural consequence of Mitsubishi's misrepresentations and omissions.

## NINTH CAUSE OF ACTION

### (Violations of New York General Business Law § 350)

### (On Behalf of the New York Sub-Class)

212. Plaintiff Hardy incorporates by reference all preceding allegations as if fully set forth herein.

213. Plaintiff Hardy brings this claim individually and on behalf of the New York Subclass.

214. New York's General Business Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce[.]" False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of … representations [made] with respect to the commodity…." N.Y. Gen. Bus. Law § 350-a.

215. Mitsubishi caused to be made or disseminated through New York, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Mitsubishi, to be untrue and misleading to consumers, including Plaintiff Hardy and the other Class members.

216. Mitsubishi has violated N.Y. Gen. Bus. Law § 350 because the omissions regarding the defective transmissions in Class Vehicles as described above, and that Mitsubishi would not cover repair or replacement of the CVT under its warranty, were material and likely to deceive a reasonable consumer.

217. Plaintiff Hardy and the other Class members have suffered injury, including the loss of money or property, as a result of Mitsubishi's false

advertising. In purchasing or leasing their Class Vehicles, Plaintiff Hardy and the other Class members relied on the representations and/or omissions of Mitsubishi with respect to the safety, quality, functionality, and reliability of the Class Vehicles and the coverage of Mitsubishi's express warranty.

218.   Accordingly, Plaintiff Hardy and the other Class members overpaid for their Class Vehicles and did not receive the benefit of the bargain for their Class Vehicles.

219.   Plaintiff Hardy, individually and on behalf of the other New York Subclass members, requests this Court enter such orders or judgments as may be necessary to enjoin Mitsubishi from continuing its unfair, unlawful and/or deceptive practices. Plaintiff Hardy and the other Class members are also entitled to recover their actual damages or $500, whichever is greater. Because Defendants acted willfully or knowingly, Plaintiff Hardy and the other Class members are entitled to recover three times actual damages, up to $10,000.

## TENTH CAUSE OF ACTION

### (Breach of Express Warranty, N.Y.U.C.C. § 2-313)

### (On Behalf of the New York Sub-Class)

220.   Plaintiff Hardy incorporates by reference all preceding allegations as if fully set forth herein.

221.   Plaintiff Hardy brings this claim individually and on behalf of the New York Subclass.

222.   Mitsubishi is and was at all relevant times a merchant with respect to motor vehicles.

223.   In connection with the purchase or lease of each one of its new vehicles, Mitsubishi provides an express New Vehicle Limited Warranty ("NVLW") for a period of 5 years or 60,000 miles. This NVLW exists to cover the entire vehicle for any "defect in materials or workmanship."

224.   Mitsubishi's NVLW formed the basis of the bargain that was reached

when Plaintiff Hardy and the other Class members purchased or leased their Class
Vehicles equipped with defective transmissions.

225.   Mitsubishi breached the express warranty to repair or replace defects
in materials and workmanship of any part of the Class Vehicles.

226.   Further, the limited warranty of repair and/or replacement fails in its
essential purpose because the contractual remedy is insufficient to make Plaintiff
Hardy and the other Class members whole and because Defendants have failed
and/or refused to adequately provide the promised remedies within a reasonable
time.

227.   Further, the limited warranty of repair and/or replacement fails in its
essential purpose because the contractual remedy is insufficient to make Plaintiff
Hardy and the other Class members whole and because Defendants have failed
and/or refused to adequately provide the promised remedies within a reasonable
time.

228.   Accordingly, recovery by Plaintiff Hardy and the New York Subclass
members is not limited to the limited warranty of repair or replacement to parts
defective in materials or workmanship, and Plaintiff Hardy, individually and on
behalf of the other Class members, seeks all remedies as allowed by law.

229.   Also, as alleged in more detail herein, at the time that Mitsubishi
warranted and sold the Class Vehicles it knew that the Class Vehicles did not
conform to Mitsubishi's Limited Warranty and were inherently defective, and
Mitsubishi wrongfully and fraudulently concealed material facts regarding its
Class Vehicles. Plaintiff Hardy and the New York Subclass members were
therefore induced to purchase or lease the Class Vehicles under false and/or
fraudulent pretenses.

230.   Due to Mitsubishi's breach of warranty as set forth herein, Plaintiff
Hardy and the other New York Subclass members assert as an additional and/or
alternative remedy, as set forth in N.Y. U.C.C. § 2-608, for a revocation of

CLASS ACTION COMPLAINT

acceptance of the goods, and for a return to Plaintiff Hardy and to the other New York Subclass members of the purchase price of all Class Vehicles currently owned for such other incidental and consequential damages as allowed under N.Y. U.C.C. §§ 2-711 and 2-608.

231.  Plaintiff Hardy and members of the New York Sub-Class were not required to notify Mitsubishi of the breach because affording Mitsubishi a reasonable opportunity to cure its breach of warranty would have been futile. Mitsubishi was also on notice of the CVT Defect from the complaints and service requests it received from Plaintiffs and the Class Members and through other internal sources.

232.  Nonetheless, Plaintiffs and members of the New York Sub-Class provided notice to Mitsubishi of the breach of express warranties when they took their vehicles to Mitsubishi -authorized provider of warranty repairs. Plaintiff Hardy also provided notice to Mitsubishi of its breach of express warranty by letter dated November 4, 2021.

233.  As a direct and proximate result of Mitsubishi's breach of express warranty, Plaintiff Hardy and the other New York Subclass members have been damaged in an amount to be determined at trial.

**ELEVENTH CAUSE OF ACTION**

**(Breach of Implied Warranty, N.Y.U.C.C. § 2-315)**

**(On Behalf of the New York Sub-Class)**

234.  Plaintiff Hardy incorporates by reference all preceding allegations as if fully set forth herein.

235.  Plaintiff Hardy brings this claim individually and on behalf of the New York Subclass.

236.  Mitsubishi marketed the Class Vehicles as safe and reliable vehicles. Such representations formed a basis of the bargain in the decisions of Plaintiff Hardy and the members of the New York Sub-Class to purchase or lease the

1    Vehicles.

2    237.   Mitsubishi was, at all relevant times, a "merchant" of motor vehicles

3    as defined by N.Y. U.C.C. Law § 2-104.

4    238.   A warranty that the Class Vehicles and/or the Defective CVTs

5    installed in them were in merchantable condition was implied by law in Class

6    Vehicle transactions.

7    239.   Mitsubishi's implied warranty formed a basis of the bargain that was

8    reached when Plaintiff Hardy and the other New York Class members purchased

9    or leased their Vehicles.

10   240.   Plaintiff Hardy and the members of the New York Sub-Class owned

11   Vehicles with defective transmissions within the warranty period but had no

12   knowledge of the existence of the Defect, which was known and concealed by

13   Mitsubishi.

14   241.   Despite the existence of the warranty, Mitsubishi failed to inform

15   Plaintiff Hardy and the members of the New York Sub-Class that the Vehicles

16   contained the defective CVTs during the warranty periods.

17   242.   Mitsubishi breached the implied warranty promising to repair and

18   correct a manufacturing defect or defect in materials or workmanship of any parts

19   they supplied.

20   243.   Mitsubishi knew about the CVT Defect, allowing them to cure their

21   breach of warranty if they chose.

22   244.   However, Mitsubishi concealed the Defect and has refused to repair

23   or replace the CVTs despite the Defect's existence at the time of sale or lease of

24   the Vehicles.

25   245.   Any attempt by Mitsubishi to disclaim or limit recovery to the terms

26   of the implied warranties is unconscionable and unenforceable here. Specifically,

27   Mitsubishi's warranty limitation is unenforceable because they knowingly sold or

28   leased a defective product without informing consumers about the Defect. The

time limits contained in Mitsubishi's warranty periods were also unconscionable and inadequate to protect Plaintiff Hardy and the members of the New York Sub-Class. Among other things, Plaintiff Hardy and the members of the New York Sub-Class had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Mitsubishi. A gross disparity in bargaining power existed between Mitsubishi and Plaintiff Hardy and the members of the New York Sub-Class, and Mitsubishi knew the CVTs were defective at the time of sale.

246.   Further, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff Hardy and the members of the New York Sub-Class whole because the replacement CVT used by Mitsubishi contains the same Defect. Affording Mitsubishi a reasonable opportunity to cure the breach therefore would be unnecessary and futile.

247.   Because of Defendants' breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, because of the CVT Defect, Plaintiff Hardy and the New York Sub-class Members were harmed and suffered actual damages in that the Class Vehicles' CVTs are substantially certain to fail before their expected useful life has run.

248.   Plaintiff Hardy and members of the New York Sub-Class were not required to notify Mitsubishi of the breach because affording Mitsubishi a reasonable opportunity to cure its breach of warranty would have been futile. Mitsubishi was also on notice of the CVT Defect from the complaints and service requests it received from Plaintiffs and the Class Members and through other internal sources.

249.   Nonetheless, Plaintiff Hardy and members of the New York Sub-Class provided notice to Mitsubishi of the breach of implied warranties when they

took their vehicles to Mitsubishi -authorized provider of warranty repairs. Plaintiff Hardy also provided notice to Mitsubishi of its breach of implied warranty by letter dated November 4, 2021.

250.   As a direct and proximate result of Defendants' breach of the implied warranty, Plaintiff Hardy and the New York Class members have been damaged in an amount to be determined at trial.

## TWELFTH CAUSE OF ACTION

**(Breach of Express Warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2303 *et seq*.)**

**(On Behalf of the Nationwide Class, or, in the Alternative, on Behalf of All Sub-Classes Against Defendants)**

251.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

252.   Plaintiffs bring this cause of action on behalf of themselves and on behalf of the Class against Defendants.

253.   Defendants provided all purchasers and lessees of the Class Vehicles with an express warranty described *infra*, which became a material part of the bargain.

254.   The transmission and its component parts were manufactured and/or installed in the Class Vehicles by Defendants and are covered by the express warranty.

255.   In a section entitled "What is Covered," Defendants' express warranty provides, in relevant part, that the warranty covers "all parts of this Vehicle supplied by MMNA[.]" The warranty further provides that if a "defect in materials or workmanship appears during the first 5 years or 60,000 odometer miles, the part will be repaired or replaced by any Authorized Mitsubishi Motors Dealer or Authorized Service Center, using new or remanufactured Authorized

1    Mitsubishi Motors parts."

2        256.   Defendants breached the express warranties by selling and leasing

3    Class Vehicles with transmissions that were defective, requiring repair or

4    replacement within the warranty period, and refusing to honor the express

5    warranty by repairing or replacing, free of charge, the transmission and its

6    component parts.  Mitsubishi has failed to "repair" the defects as alleged herein.

7        257.   Plaintiffs were not required to notify Mitsubishi of the breach or were

8    not required to do so because affording Mitsubishi a reasonable opportunity to

9    cure its breach of written warranty would have been futile. Defendants were also

10   on notice of the defect from complaints and service requests they received from

11   Class Members, from repairs and/or replacements of the transmission, and from

12   other internal sources.

13       258.   Plaintiffs also provided notice to Mitsubishi of its breach of warranty

14   claims under the MMWA by letters dated November 4, 2021 (Plaintiffs Hardy and

15   Lucassian), and December 1, 2021 (Plaintiff Brown).

16       259.   As a direct and proximate cause of Defendants' breach, Plaintiffs and

17   the other Class members have suffered, and continue to suffer, damages, including

18   economic damages at the point of sale or lease. Additionally, Plaintiffs and the

19   other Class members have incurred or will incur economic damages at the point

20   of repair in the form of the cost of repair.

21       260.   Plaintiffs and the other Class members are entitled to legal and

22   equitable relief against Defendants, including actual damages, consequential

23   damages, specific performance, attorneys' fees, costs of suit, and other relief as

24   appropriate.

25

26

27

28

CLASS ACTION COMPLAINT

**THIRTEENTH CAUSE OF ACTION**

**(Breach of Implied Warranty under the Magnuson-Moss Warranty Act,**

**15 U.S.C. § 2303 *et seq.*)**

**(On Behalf of the Nationwide Class, or, in the Alternative, on Behalf of All**

**Sub-Classes Against Defendants)**

261.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

262.    Plaintiffs bring this cause of action on behalf of themselves and the Class against Defendants.

263.    The Class Vehicles are a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

264.    Plaintiffs and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

265.    Defendants are "suppliers" and "warrantors" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

266.    Mitsubishi impliedly warranted that the Class Vehicles were of merchantable quality and fit for use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their transmissions manufactured, supplied, distributed, and/or sold by Mitsubishi would provide safe and reliable transportation; and (ii) a warranty that the Class Vehicles and their transmissions would be fit for their intended use while the Class Vehicles were being operated.

267.    Contrary to the applicable implied warranties, the Class Vehicles and their transmissions at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and Class members with reliable, durable, and safe transportation.   Instead, the Class Vehicles are defective, including the defective design and materials of their transmissions.

268.    Defendants' breach of implied warranties has deprived Plaintiffs and Class members of the benefit of their bargain.

269.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25,000. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

270.   Defendants have been afforded a reasonable opportunity to cure their breach, including when Plaintiffs and Class members brought their vehicles in for diagnoses and transmission repair.

271.   As a direct and proximate cause of Defendants' breach of implied warranties, Plaintiffs and Class members sustained and incurred damages and other losses in an amount to be determined at trial. Defendants' conduct damaged Plaintiffs and Class members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

272.   As a result of Defendants' violations of the Magnuson-Moss Warranty Act as alleged herein, Plaintiffs and Class members have incurred damages.

273.   Plaintiffs also provided notice to Mitsubishi of its breach of warranty claims under the MMWA by letters dated November 4, 2021 (Plaintiffs Hardy and Lucassian), and December 1, 2021 (Plaintiff Brown).

**FOURTEENTH CAUSE OF ACTION**

**(For Fraud by Omission or Fraudulent Concealment)**

**(On Behalf of the Nationwide Class, or, in the Alternative, on Behalf of All Sub-Classes Against Defendants)**

274.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

275.   Plaintiffs bring this cause of action on behalf of themselves and the Class or, alternatively, on behalf of all Sub-Classes against Defendants.

276.   Defendants knew that the Class Vehicles suffered from an inherent

1   CVT Defect, were defectively designed and/or manufactured, and were not
2   suitable for their intended use.

3       277.    Defendants concealed from and failed to disclose to Plaintiffs and
4   Class Members the defective nature of the Class Vehicles.

5       278.    Defendants were under a duty to Plaintiffs and Class Members to
6   disclose the defective nature of the Class Vehicles because:

7           a. Defendants were in a superior position to know the true state of
8              facts about the safety defect contained in the Class Vehicles;

9           b. The omitted facts were material because they directly impact the
10             safety of the Class Vehicles;

11          c. Defendants knew the omitted facts regarding the CVT Defect were
12             not known to or reasonably discoverable by Plaintiffs and Class
13             Members;

14          d. Defendants made partial disclosures about the quality of the Class
15             Vehicles without revealing their true defective nature; and,

16          e. Defendants actively concealed the defective nature of the Class
17             Vehicles from Plaintiffs and Class Members.

18      279.    The facts concealed or not disclosed by Defendants to Plaintiffs and
19  the other Class Members are material in that a reasonable person would have
20  considered them to be important in deciding whether to purchase or lease
21  Defendants' Class Vehicles or pay a lesser price for them. Whether a vehicle's
22  transmission is defective, which can cause inordinately long times to accelerate
23  from a stop or low speed, exhibit a hard deceleration or "clunk" when drivers either
24  slow down or accelerate at low speeds, shudder and shake or make a loud clunking
25  or knocking sound when the CVT finally selects the appropriate gear ratio, and
26  completely fail to accelerate, are material safety concerns. Had Plaintiffs and Class
27  Members known about the defective nature of the Class Vehicles, they would not
28  have purchased or leased the Class Vehicles or would have paid less for them.

280. Defendants concealed or failed to disclose the true nature of the design and/or manufacturing defects contained in the Class Vehicles to induce Plaintiffs and Class Members to act thereon. Plaintiffs and the other Class Members justifiably relied on Defendant's omissions to their detriment. This detriment is evident from Plaintiffs' and Class Members' purchase or lease of Defendants' defective Class Vehicles.

281. Defendants continued to conceal the defective nature of the Class Vehicles even after Class Members began to report the problems. Indeed, Defendants continue to cover up and conceal the true nature of the problem today.

282. As a direct and proximate result of Defendants' misconduct, Plaintiffs and Class Members have suffered and will continue to suffer actual damages. Plaintiffs and the Class reserve their right to elect either to (a) rescind their purchase or lease of the defective Vehicles and obtain restitution or (b) affirm their purchase or lease of the defective Vehicles and recover damages.

283. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class' rights and well-being to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof

## FIFTEENTH CAUSE OF ACTION

### (For Unjust Enrichment)

### (On Behalf of the Nationwide Class, or, in the Alternative, on Behalf of All Sub-Classes Against Defendants)

284. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

285. Plaintiffs bring this cause of action on behalf of themselves and the Class or, alternatively, on behalf of all Sub-Classes against Defendants.

286. Defendants have received and retained a benefit from Plaintiffs and

1    the members of the Class, and inequity has resulted.

2        287.    As a direct and proximate result of Defendants' failure to disclose

3    known defects, Defendants have profited through the sale and lease of the Class

4    Vehicles, the value of which was artificially inflated by Defendants' concealment

5    of and omissions regarding the CVT Defect. Defendants charged higher prices for

6    the vehicles than the vehicles' true value, and Plaintiffs and Class Members thus

7    overpaid for the Class Vehicles. Although these vehicles are purchased through

8    Defendants' authorized dealers and distributors, the money from the vehicle sales

9    flows directly back to Defendants.

10        288.    Additionally, as a direct and proximate result of Defendants' failure

11    to disclose known defects in the Class Vehicles, Plaintiffs and Class Members

12    have vehicles that require repeated, high-cost repairs that can and therefore have

13    conferred an unjust substantial benefit upon Defendants.

14        289.    Defendants have been unjustly enriched due to the known defects in

15    the Class Vehicles through the use of money paid that earned interest or otherwise

16    added to Defendants' profits when said money should have remained with

17    Plaintiffs and Class Members.

18        290.    Plaintiffs and Class Members were not aware of the true facts

19    regarding the Defect in the Class Vehicles and did not benefit from Defendants'

20    unjust conduct.

21        291.    As a result of the Defendants' unjust enrichment, Plaintiffs and Class

22    Members have suffered damages.

23        292.    Plaintiffs do not seek restitution under their unjust enrichment claim.

24    Rather, Plaintiffs and Class Members seek non-restitutionary disgorgement of the

25    financial profits that Defendants obtained as a result of its unjust conduct.

26        293.    Additionally, Plaintiffs seek injunctive relief to compel Defendants

27    to offer, under warranty, remediation solutions that Defendant identifies. Plaintiffs

28    also    seek    injunctive    relief    enjoining    Defendants    from    further    deceptive

distribution, sales, and lease practices with respect to Class Vehicles, enjoining Defendants from selling the Class Vehicles with the misleading information; compelling Defendants to provide Class members with a replacement components that do not contain the defects alleged herein; and/or compelling Defendants to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed. Money damages are not an adequate remedy for the above requested non-monetary injunctive relief.

## RELIEF REQUESTED

294.   Plaintiffs, on behalf of themselves and all others similarly situated, request the Court enter judgment against Defendants, as follows:

      (a) An order certifying the proposed Class and Sub-Classes, designating Plaintiffs as named representatives of the Class, and designating the undersigned as Class Counsel;

      (b) A declaration that Defendants is financially responsible for notifying all Class Members about the defective nature of the CVT, including the need for periodic maintenance;

      (c) An order enjoining Defendants from further deceptive distribution, sales, and lease practices with respect to Class Vehicles; compelling Defendants to issue a voluntary recall for the Class Vehicles pursuant to 49 U.S.C. § 30118(a); compelling Defendants to repair and eliminate the CVT Defect from every Class Vehicle; enjoining Defendants from selling the Class Vehicles with the misleading information; and/or compelling Defendants to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed;

      (d) An award to Plaintiff and the Class for compensatory, exemplary,

and statutory damages, including interest, in an amount to be proven at trial; except that Plaintiff Brown does not currently seek monetary damages under the Consumers Legal Remedies Act;

(e) Any and all remedies provided pursuant to the Magnuson-Moss Warranty Act;

(f) A declaration that Defendants must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale or lease of its Class Vehicles or make full restitution to Plaintiffs and Class Members;

(g) An award of attorneys' fees and costs, as allowed by law;

(h) An award of pre-judgment and post-judgment interest, as provided by law;

(i) Leave to amend the Complaint to conform to the evidence produced at trial; and

(j) Such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

295.   Pursuant to Federal Rule of Civil Procedure 38(b) and Central District of California Local Rule 38-1, Plaintiffs demand a trial by jury of all issues in this action so triable.

Dated:  December 3, 2021                     Respectfully submitted,

                                                      **Capstone Law APC**

                                               By: /s/ Tarek H. Zohdy
                                                   Tarek H. Zohdy
                                                   Cody R. Padgett
                                                     Laura E. Goolsby

                                               Attorneys for Plaintiff

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/Russell D. Paul
Russell D. Paul
Amey J. Park
**BERGER MONTAGUE PC**

CLASS ACTION COMPLAINT